# Exhibit E

840092

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

☐ PICK-UP        ☐ WAIT        ☐ MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



200417973562

FILED
2023 NOV 17 AM 11: 19
SECRETARY OF STATE
TALLAHASSEE, FL

RECEIVED
2023 NOV 17 PM 4: 57
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

# FLORIDA FILING & SEARCH SERVICES, INC.
## P.O. BOX 10662  TALLAHASSEE, FL  32302
### 155 Office Plaza Dr  Ste A  Tallahassee FL  32301
### PHONE:  (800) 435-9371;  FAX:  (866) 860-8395

**DATE:**       11/16/2023

**NAME:**       STANDARD CHARTERED BANK

**TYPE OF FILING:**   *Articles of*   CORRECTION

**COST:**       52.50

**RETURN:**   CERTIFIED COPY AND GOOD STANDING PLEASE

**ACCOUNT: FCA000000015**

**AUTHORIZATION:**   ABBIE/PAUL HODGE

# COVER LETTER

TO:     Amendment Section
        Division of Corporations

SUBJECT: ___STANDARD CHARTERED BANK_____
                        Name of Corporation

DOCUMENT NUMBER: 840092_____

The enclosed Articles of Correction and fee are submitted for filing.

Please return all correspondence concerning this matter to the following:

Bowman Brown, Esq.
_____
                Name of Contact Person

Shutts & Bowen, LLP
_____
                    Firm/Company

200 S. Biscayne Blvd., Suite 4100
_____
                       Address

Miami, Florida 33131
_____
                City/State and Zip Code

bbrown@shutts.com
_____
        E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Bowman Brown                    at ( 305 ) 379-9107
_____             _____
   Name of Contact Person            Area Code   Daytime Telephone Number

Enclosed is a check for the following amount:

☐ $35.00 Filing Fee              ☐ $43.75 Filing Fee & Certificate of Status

☐ $43.75 Filing Fee & Certified Copy    ☐ $52.50 Filing Fee, Certificate of Status &
                                             Certified Copy

**Mailing Address:**                 **Street Address:**
Amendment Section                    Amendment Section
Division of Corporations             Division of Corporations
P.O. Box 6327                        The Centre of Tallahassee

2023 NOV 17 AM 11: 19
FILED
SECRETARY OF STATE
TALLAHASSEE, FL

# ARTICLES OF CORRECTION

For

Standard Chartered Bank PLC

_____
Name of Corporation as currently filed with the Florida Dept. of State

840092
_____
Document Number (if known)

Pursuant to the provisions of Section 607.0124, Florida Statutes.

These articles of correction correct the corporation's corporate name, as shown in its Royal Charter
_____
[Document Type Being Corrected]

filed with the Department of State on February 27, 1978
_____
(File Date of Document)

Specify the inaccuracy, incorrect statement, or defect:

The corporation, Standard Chartered Bank, seeks to correct its corporate name, as shown on the records of the

Department of State. The corporation's corporate name, as shown in such records, includes the suffix "PLC", which

relates to the corporation's parent company, "Standard Chartered PLC", rather than to Standard Chartered

Bank, which is the entity authorized to transact business in Florida. A certified copy of the corporation's Royal

Charter, granted by Her Majesty Queen Victoria on 29th December 1853, as subsequently amended, confirms the

corporation's correct name, and a certificate of status, are attached to these Articles of Correction.


Correct the inaccuracy, incorrect statement, or defect:

The corporation, Standard Chartered Bank, requests that the corporate name of record be corrected by omitting the

suffix "PLC", which identifies the corporation's parent company. As a financial institution licensed by the Florida

Office of Financial Regulation (OFR), the corporation is authorized to transact business in Florida.


_____

_____

_____
(Signature of a director, the vice president or other officer - if directors or officers have
not been selected, by an incorporator - if in the hands of the receiver, trustee, or
other court appointed fiduciary, by that fiduciary.)

Caitlin Behrens                                  COO, Americas
_____                   _____
(Typed or printed name of person signing)        (Title of person signing)

**Filing Fee: $35.00**

2023 NOV 17 AM 11:19
SECRETARY OF STATE
TALLAHASSEE, FL
FILED

# DePinna
### NOTARIES

I, **Ryan Edward Ronald Moody**, Notary Public of London, England, authorised to practise in all parts of England and Wales,

## DO HEREBY CERTIFY AND ATTEST:

**THAT** the company styled **"STANDARD CHARTERED BANK"** is a duly organised and existing company incorporated by a Royal Charter granted by Her Majesty Queen Victoria on 29th December 1853 and continued by subsequent supplemental charters ("SCB"),

**THAT** SCB was incorporated under the name **THE CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA**, which name was changed on 5th December 1956 to **THE CHARTERED BANK** pursuant to Clause 3 of the Royal Charter granted on 25th June 1956, which name was changed to **STANDARD CHARTERED BANK** on 1st January 1985 pursuant to the STANDARD CHARTERED BANK ACT 1984, an Act of the Parliament of the United Kingdom of Great Britain and Northern Ireland,

**THAT** SCB is an unregistered company within the meaning of section 1043 of the COMPANIES ACT 2006, also an Act of the Parliament of the United Kingdom of Great Britain and Northern Ireland, and regulation 2 of the UNREGISTERED COMPANIES REGULATIONS 2009, a statutory instrument made by the Secretary of State in exercise of the powers conferred by sections 1043, 1210(1)(h) and 1292(2) of the COMPANIES ACT 2006,

**THAT** the Registrar of Companies for England and Wales has allocated the reference number **ZC18** to SCB pursuant to section 1066 of the COMPANIES ACT 2006, as modified in respect of unregistered companies by the UNREGISTERED COMPANIES REGULATIONS 2009,

**THAT** the principal office of SCB is located at 1 Basinghall Avenue, London EC2V 5DD, England,

**AND THAT**, on the basis of a search conducted by me today of the documents received by the Registrar of Companies pursuant to the UNREGISTERED COMPANIES REGULATIONS 2009 and of the notices published in the London Gazette, which is the official publication for insolvency notices in respect of an unregistered company having its principal office in England and Wales, SCB has complied with its filing requirements under the applicable provisions of the Companies Act 2006 as modified in respect of unregistered companies by the UNREGISTERED COMPANIES REGULATIONS 2009 and no proceedings to wind up SCB under Part V of the INSOLVENCY ACT 1986, also an Act of the Parliament of the United Kingdom of Great Britain and Northern Ireland, have been initiated.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my seal of office in London, England, this sixth day of November in the year two thousand and twenty-three.



DE PINNA LLP

| APOSTILLE | |
|---|---|
| (Convention de La Haye du 5 octobre 1961) | |
| **1.** **Country:**<br>Pays / Pais. | United Kingdom of Great Britain and Northern Ireland |
| **This public document**<br>Le présent acte public / El presente documento público | |
| **2.** **Has been signed by**<br>a été signé par<br>ha sido firmado por | Ryan Edward Moody |
| **3.** **Acting in the capacity of**<br>agissant en qualité de<br>quien actúa en calidad de | Notary Public |
| **4.** **Bears the seal / stamp of**<br>est revêtu du sceau / timbre de<br>y está revestido del sello / timbre de | The Said Notary Public |
| **Certified**<br>Attesté / Certificado | |
| **5.** **at**<br>à / en   London | **6.** **the**<br>le / el día   06 November 2023 |
| **7.** **by**<br>par / por | His Majesty's Principal Secretary of State for<br>Foreign, Commonwealth and Development Affairs |
| **8.** **Number**<br>sous no / bajo el numero | APO-FCB8-A9DX-3F02-AN57 |
| **9.** **Seal / stamp**<br>Sceau / timbre<br>Sello / timbre | **10.** **Signature**<br>Signature<br>Firma   M. Mohamed<br><br>MM |

This Apostille is not to be used in the UK and only confirms the authenticity of the signature, seal or stamp on the attached UK public document. It does not confirm the authenticity of the underlying document. Apostilles attached to documents that have been photocopied and certified in the UK confirm the signature of the UK official who conducted the certification only. It does not authenticate either the signature on the original document or the contents of the original document in any way

# DePinna
### NOTARIES

I, **Ryan Edward Ronald Moody**, Notary Public of London, England, authorised to practise in all parts of England and Wales,

## DO HEREBY CERTIFY AND ATTEST:

**THAT** the company styled "**STANDARD CHARTERED BANK**" is a duly organised and existing company incorporated by a Royal Charter granted by Her Majesty Queen Victoria on 29th December 1853 and continued by subsequent supplemental charters ("SCB"),

**THAT** SCB was incorporated under the name **THE CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA**, which name was changed on 5th December 1956 to **THE CHARTERED BANK** pursuant to Clause 3 of the Royal Charter granted on 25th June 1956, which name was changed to **STANDARD CHARTERED BANK** on 1st January 1985 pursuant to the STANDARD CHARTERED BANK ACT 1984, an Act of the Parliament of the United Kingdom of Great Britain and Northern Ireland,

**THAT** SCB is an unregistered company within the meaning of section 1043 of the COMPANIES ACT 2006, also an Act of the Parliament of the United Kingdom of Great Britain and Northern Ireland, and regulation 2 of the UNREGISTERED COMPANIES REGULATIONS 2009, a statutory instrument made by the Secretary of State in exercise of the powers conferred by sections 1043, 1210(1)(h) and 1292(2) of the COMPANIES ACT 2006,

**THAT** the Registrar of Companies for England and Wales has allocated the reference number **ZC18** to SCB pursuant to section 1066 of the COMPANIES ACT 2006, as modified in respect of unregistered companies by the UNREGISTERED COMPANIES REGULATIONS 2009,

**THAT** the principal office of SCB is located at 1 Basinghall Avenue, London EC2V 5DD, England,

**AND THAT**, on the basis of a search conducted by me today of the documents received by the Registrar of Companies pursuant to the UNREGISTERED COMPANIES REGULATIONS 2009, the hereunto annexed document is a true and faithful print out of the Royal Charter, Bye-Laws and Rules of SCB as currently filed by the Registrar of Companies.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my seal of office in London, England, this sixth day of November in the year two thousand and twenty-three.










| APOSTILLE | |
|---|---|
| (Convention de La Haye du 5 octobre 1961) | |
| **1. Country:** Pays / Pais: | United Kingdom of Great Britain and Northern Ireland |
| **This public document** Le présent acte public / El presente documento público | |
| **2. Has been signed by** a été signé par ha sido firmado por | Ryan Edward Moody |
| **3. Acting in the capacity of** agissant en qualité de quien actúa en calidad de | Notary Public |
| **4. Bears the seal / stamp of** est revêtu du sceau / timbre de y está revestido del sello / timbre de | The Sa'd Notary Public |
| **Certified** Atteste / Certificado | |
| **5. at** à / en    London | **6. the** le / el dia    06 November 2023 |
| **7. by** par / por | His Majesty's Principal Secretary of State for Foreign, Commonwealth and Development Affairs |
| **8. Number** sous no / bajo el numero | APO-D5DX-ZKTW-JG02-AN58 |
| **9. Seal / stamp** Sceau / timbre Sello / timbre | **10. Signature** Signature Firma    M. Mohamed    $\mathcal{MM}$ |

This Apostille is not to be used in the UK and only confirms the authenticity of the signature, seal or stamp on the attached UK public document. It does not confirm the authenticity of the underlying document. Apostilles attached to documents that have been photocopied and certified in the UK confirm the signature of the UK official who conducted the certification only. It does not authenticate either the signature on the original document or the contents of the original document in any way.

APPENDIX A

# ROYAL CHARTER, BYE-LAWS
# AND RULES

### OF

# STANDARD CHARTERED BANK

1 January 1985

Royal Charter last amended 22 March 2005
Bye-laws and Rules last amended 27 February 2012

CERTIFIED A TRUE COPY



Mr T C Skippen
Company Secretary
Standard Chartered Bank



ELIZABETH THE SECOND by the Grace of God of the United Kingdom of Great Britain and Northern Ireland and of Our other Realms and Territories Queen Head of the Commonwealth Defender of the Faith

**To all to whom these presents shall come**

**Greeting!**

WHEREAS by a Royal Charter under the Great Seal bearing date at Westminster the 29th day of December in the 17th year of the Reign of Her Majesty Queen Victoria (hereinafter referred to as "the Original Charter") a Company (hereinafter referred to as "the Company") was incorporated by the name of The Chartered Bank of India, Australia and China with a Common Seal for the purpose of carrying on in London under the management of a Court of Directors by means of Banks and Branch Banks the business of Banking in certain parts of the Commonwealth and elsewhere as therein mentioned subject nevertheless to such restrictions and provisions as were in the Original Charter contained or referred to for the period of Twenty-one years from the date of the Original Charter

AND WHEREAS by numerous Supplemental Charters under the Great Seal granted by Her said Majesty by His Majesty King Edward the Seventh and by His Majesty King George the Fifth on divers dates (all of which Supplemental Charters are hereinafter referred to collectively as "the revoked Supplemental Charters") various alterations and modifications were from time to time made in the provisions of the Original Charter and of certain of the revoked Supplemental Charters and the period during which the said Company should continue incorporated was extended to Thirty years from the 12th day of July 1909

AND WHEREAS by a Deed of Settlement (hereinafter called "the said Deed of Settlement") dated the 20th day of March 1854 and made between the subscribers for upwards of one-half of the original capital of the Company of the one part and the Company of the other part and entered into pursuant to the directions contained in the Original Charter and approved by the Commissioners of Her said Majesty's Treasury as thereby required provisions were made for the carrying on of the business of the Company and for the management of its affairs so far as not provided for by the Original Charter And by the said Deed of Settlement it was provided (Clause 53) that two extraordinary general meetings of the shareholders of the Company held at an interval of at least 14 days might (inter alia) with the approval of the Commissioners of the Treasury and in accordance with the Original Charter annul or alter all or any of the provisions of the said Deed of Settlement and adopt or authorise the Court of Directors to adopt any other provisions in lieu thereof to be subject to be from time to time annulled or altered in like manner



And with the like approval might authorise and adopt any Supplemental Deed of Settlement  And with the like approval might authorise make and establish all proper and necessary or expedient laws, bye-laws, rules and regulations for the government of the Company and the observance thereof by the individual members of the Company not contrary to the Laws of Her Majesty's Realm or Colonies

AND WHEREAS by the Supplemental Charter of the 10th day of November 1874 it was declared that it should be lawful for the Company from and after the 29th day of December 1874 for the period therein mentioned to carry on the business of banking as authorised by the Original Charter and Supplemental Charter of the 20th day of July 1861 and the said Deed of Settlement and Supplemental Deed of Settlement then already executed or such other deed or modification thereof as the Company might thereafter without reference to the Treasury from time to time determine but absolutely freed and discharged from all duties obligations or responsibilities by the Original Charter or the revoked Supplemental Charter or by the said Deed of Settlement or the said Supplemental Deed of Settlement created between the Commissioners of the Treasury and the Company save as therein otherwise provided and by the Supplemental Charter now in statement provision was made for requiring the assent of the Commissioners of the Treasury to certain matters and thinks therein specified which did not in any way relate to the alteration of the said Deed of Settlement or to the adoption of a Supplemental Deed of Settlement

AND WHEREAS in pursuance of the authorities conferred by the said Deed of Settlement and the said Supplemental Charter of the 10th day of November 1874 certain of the original provisions of the Deed of Settlement have from time to time been annulled and new provisions substituted therefor and embodied or recorded in further Supplemental Deeds of Settlement dated the 9th day of May 1902 and the 2nd day of May 1923 and lastly by resolutions duly passed and confirmed at extraordinary general meetings of the Company duly convened and constituted in accordance with the provisions of the said Deed of Settlement and by a further Supplemental Deed of Settlement dated the 6th day of May 1930 (hereinafter called "the 1930 Deed of Settlement") and executed by the Company pursuant to authority conferred by the said resolutions so to do all the then subsisting provisions of the said Deed of Settlement and Supplemental Deeds of Settlement were annulled and new provisions in the form of Bye-laws and Rules (as set out in the Schedule to the 1930 Deed of Settlement) were adopted for regulating the carrying on of the business of the Company and the management of its affairs so far as not regulated by the provisions of the Original and revoked Supplemental Charters

AND WHEREAS by a further Supplemental Charter under the Great Seal granted by His Majesty King George the Fifth on the 12th day of September 1932 (hereinafter referred to as "the Consolidating Charter") all clauses and provisions of the Original Charter and the revoked Supplemental Charters (except those incorporating and continuing the incorporation of the Company with perpetual succession and a Common Seal) were revoked and

determined and the provisions of the Consolidating Charter were substituted therefor

AND WHEREAS by the Consolidating Charter it was declared that the Company might from time to time by Special Resolution (as therein defined) of its Shareholders without the execution by the Company of any Supplemental Deed of Settlement alter or add to its Bye-laws and Rules as set out in the 1930 Deed of Settlement and that any alteration or addition so made should be as valid and effective for all purposes and be binding upon the Shareholders of the Company for the time being in the same manner as if such alteration or addition had been contained in the then present Bye-laws and Rules and should itself be subject in like manner to alteration by Special Resolution as aforesaid

AND WHEREAS by a further Supplemental Charter under the Great Seal granted by His late Majesty King George the Sixth on the 5th day of July 1939 (hereinafter called "the 1939 Supplemental Charter") various alterations and modifications were made in the provisions of the Consolidating Charter and the period during which the Company should continue incorporated was extended to thirty years from the 12th day of July 1939

AND WHEREAS pursuant to the authorities in that behalf conferred by the Original Charter the revoked Supplemental Charters and the Consolidating Charter and the Bye-laws and Rules of the Company the original share capital of the Company has been increased from time to time and the shares in its capital have been sub-divided and converted into Stock and the capital of the Company is now £3,500,000 Stock all issued and fully paid up

AND WHEREAS the Company notwithstanding its names has never had any Branch in Australia

AND WHEREAS the Company has presented to Us a petition in which it has represented to Us that it is desirable that certain provisions of the Consolidating Charter and the 1939 Supplemental Charter should be amended or cancelled and that certain new provisions be introduced and in particular has prayed that alterations be made to effect the following -

(A)     That the Company may continue to be incorporated and established for ever unless and until this Our Charter shall be revoked or made void in manner hereinafter mentioned

(B)     That the Company may be empowered to carry on the business of a banker in any part of the world provided that it shall not establish a Branch or Agency in any territory in which it has not at the date when this Our Charter takes effect established a Branch or (as the case may be) an Agency excepting with the previous sanction of and subject to such conditions as may be imposed by the Government of the Territory in which such Branch or Agency is established



(C)     That the Company may be empowered with the consent of the Commissioners of Our Treasury to change the name of the Company

(D)     That the power of the Company to make issue re-issue and circulate notes should be restricted to the Colony of Hong Kong and that it should be obligatory for the Company to keep deposited in manner hereinafter provided coin or bullion or legal tender notes or securities or certificates or indebtedness or other direct obligations of the Government of the said Colony equal in value to the whole of the notes issued by the Company and actually in circulation

(E)     That the Company may be empowered in connection with the matters aforesaid to promote companies for the purpose of carrying on any part of the business or exercising any of the powers of the Company or for the purpose of carrying on or exercising any business or power which the Company is authorised to carry on or exercise or which in the opinion of the Company may conveniently and advantageously be combined with any business which the Company is authorised to carry on and to enter into arrangements for sharing profits, joint adventure, amalgamation and other like matters

(F)     That the Company may be empowered to subscribe to support or become a member of any Chamber of Commerce or other institution or association having among its objects the promotion or protection of the interests of persons engaged in banking commerce or industry

(G)     That the Company should be empowered to purchase or otherwise acquire the whole or any part of the business property and liabilities of any person or Company carrying on any business which the Company has power to carry on or any shares securities or obligations of any Company carrying on any such business

(H)     That the Company should have power from time to time to change its Common Seal and also to adopt for use in any territory district or place not within the United Kingdom one or more official seals which should be facsimiles of the Common Seal with the addition on the face thereof the name of the territory district or place where it is to be used

(I)     That the provisions of the Charter requiring certain special provisions to be contained in the Bye-laws of the Company should include provision for –

               (i)   a Bye-law requiring the yearly audit of the accounts of the Company by one or more Auditors not being Directors

4



thereof in place of the requirement of the Consolidating Charter of two or more such Auditors

(ii)   a Bye-law requiring the appointment of a Secretary of the Company

(J)   That the Company may be empowered to divide its capital into shares or stock of different classes to convert any of its fully paid up shares into stock and to exercise certain other powers with regard to its capital and the shares therein and that the Company may be deemed always to have had such power

(K)   That the Company may be empowered with the consent of the Commissioners of Our Treasury by Special Resolution to reduce the capital of the Company in any way

(L)   That the obligations of the Proprietors of any share or stock unit in the capital in the Company to contribute to the payment of the debts and liabilities of the Company in the winding up of its affairs any amount in excess of the amounts subscribed or so much thereof as shall not previously have been paid up should be cancelled

(M)   That it should be lawful for Us Our Heirs or Successors at any time to revoke and make void Our Charter or to add such modifications provisions or restrictions thereto as We, Our Heirs or Successors shall think fit

AND WHEREAS the Company has further represented to Us by its said Petition that it is desirable that the Consolidating Charter and the 1939 Supplemental Charter should be replaced by a Charter consolidating such of the provisions thereof as are still operative together with the further powers and provisions for which the Company has prayed Us in the said Petition

AND WHEREAS the Company has further represented to Us by its said Petition that it is desirable to provide that the Company should be regulated by regulations to be known as the Rules and Bye-laws of the Company in place of the provisions of its present Rules and Bye-laws and that the new Rules and Bye-laws as at the date when this Our Charter takes effect should (without prejudice to the Company's power of altering them) be Scheduled to this Our Charter and such Rules and Bye-laws are Scheduled hereto accordingly

NOW KNOW YE that as well upon the prayer of the Company as also of Our Special Grace certain knowledge and mere motion WE HAVE WILLED AND ORDAINED AND DO BY THESE PRESENTS WILL AND ORDAIN as follows -

1   The provisions of this Our Charter shall have effect as from the date when We have caused these OUR LETTERS to be made patent



2    In this Our Charter the following words and expressions shall unless repugnant to the context have the following meanings namely -

See footnote 1

"The Existing Charters" means and includes the Original the Consolidating and all the Supplemental Charters

The "Treasury" means the Commissioners for the time being of Our Treasury

See footnote 2

"Special Resolution" means special resolution as defined by Section 141 of the Companies Act, 1948, or any Statutory provision hereafter substituted for the said Section and for the time being in force which shall be regarded as repeated herein with the substitution of references to the Bye-laws and Rules of the Company for references to Articles of Association

See footnote 3    3    The Company may by Special Resolution change its name but no such resolution shall be effective until it has received the sanction of the Treasury   Provided that a change of the name of the Company shall not affect any rights or obligations of the Company or render defective any legal proceedings by or against the Company and any legal proceedings that might have been continued or commenced against it by its former name may be continued or commenced against it by its new name

4    All clauses and provisions of the Existing Charters (other than and except those incorporating and continuing the incorporation of the Company with perpetual succession and a common seal) shall be and the same are hereby revoked and determined and the provisions of this Our Charter shall henceforth be substituted therefor   Provided that notwithstanding such revocation and determination of the provisions of the existing Charters (except as aforesaid) everything done or suffered thereunder previously to the date of this Our Charter shall be and continue of the same force and effect as if the said revoked and determined provisions had continued in full force and effect

Note 1    The following definition was added to Article 2 by Supplemental Charter on 12 February 1997 "Hong Kong" means the territory currently knows as the Colony of Hong Kong and to be known as the Hong Kong Special Administrative Region of the People's Republic of China

Note 2    The words "Section 141 of the Companies Act 1948" were replaced by Section 378 of the Companies Act 1985" by Supplemental Charter of 12 February 1997

Note 3    By Special Resolution passed on 5 December 1956 and sanctioned by the Treasury the name of the Company was changed to "The Chartered Bank"   Under Clause (3(1)(b) of the Standard Chartered Bank Act 1984 the name of the Chartered Bank was changed to Standard Chartered Bank with effect from 1st January 1985



5    The Company is and shall subject to the provisions of this Our
Charter continue to be incorporated and established for ever
unless and until this Our Charter shall be revoked or made void in
manner hereinafter provided for the following objects or purposes
namely -

(i)    To carry on in London under the management of a
Court of Directors by means of Banks and Branch Banks the
business of banking in the United Kingdom the
Commonwealth and elsewhere throughout the World

(ii)    To carry on in any part of the world trustee and
executor business that is to say. To act as executors and
administrators and trustees and to undertake and execute
trusts of all kinds, whether private or public including religious
and charitable trusts and to transact all kinds of trust and
agency business either  with or if the Company so desires
without remuneration and in particular and without limiting
the generality of the above to act wherever the Company
may lawfully so do as judicial and custodian trustees,
trustees for the holders of debentures and debenture stock
administrators of the property of convicts receivers managers
and liquidators and to perform and discharge the duties and
functions incident thereto

See footnote            (iii)    To carry on in any part of the world any other business
which may, in the opinion of the Court of Directors,
conveniently and advantageously be combined with any
business which the Company is authorised to carry on

6    The Company has and shall continue whilst incorporated to have
and may exercise the following powers namely -

(i)    The Company may establish Branches or Agencies in
any places where such Branches or Agencies may be found
to be desirable in connection with the business of its Head
Office or other establishments Provided that the Company
shall not establish a Branch or Agency in any territory in
which it has not at the date when this Our Charter takes
effect established a Branch or (as the case may be) an
Agency except with the previous sanction of and subject to
such conditions as may be imposed by the Government of
the territory in which such  Branch or Agency is established

---

Note   Article 5(iii) was inserted by Order of Her Majesty the Queen in Council on 22 March 2005

See footnote 1

(ii)    The Company may make issue re-issue and circulate at and from its Branch Bank in Hong Kong and at Branch Banks elsewhere in the world bank-notes payable to bearer on demand or otherwise

Provided that the power of the Company to make issue re-issue and circulate bank-notes payable to bearer in Hong Kong without prejudice to the generality of the provisions of clause 9 of this Our Charter be subject to the following restrictions namely -

(A)  All such bank-notes shall bear date at the place of issue and shall be payable to bearer on demand

(B)  If such bank-notes at any time are not legal tender in Hong Kong they shall be made payable in coin or notes being legal tender in the United Kingdom or coin or notes lawfully current in Hong Kong

See footnote 2

(iii)   The Company may from time to time and at all timeshereafter purchase take hold and enjoy as well in the United Kingdom as in any other part of the world such houses, offices, buildings, lands and other hereditaments without restriction as to the value or annual value thereof as shall or may from time to time be actually and *bona fide* necessary and proper for the purpose of managing conducting and carrying on the business of the Company but not for any other purpose (except as hereinafter specified) and to sell, grant, demise, exchange, convey and dispose of the same or any of them respectively

(iv)   The Company may manage demise and let and receive the rents and profits of such portions of any houses, offices, buildings, lands and other hereditaments now owned or from time to time acquired by it as for the time being it may not actually occupy for the purposes of its business

(v)   The Company may notwithstanding any other provision hereof accept any lands, houses or other real or any personal estate in satisfaction, liquidation or payment of any debt absolutely and *bona fide* due and owing to the Company and may also take any mortgage or other security on real or personal property as aforesaid as a security for any moneys due owing or payable or to become due owing or payable to the Company or for the due performance or

Note 1   Article 6-clause (ii), the proviso to clause (ii) and paragraphs A and B of that proviso were amended by Supplemental Charter on 12 February 1997

Note 2   Clause (iii) of Article 6 was amended by Supplemental Charter on 12 February 1997

discharge of any other liabilities or obligations whether arising or incurred before or after the taking of such security and may hold such lands, houses and other property for such reasonable time (but for such reasonable time only) after the Company shall have acquired an absolute interest therein as shall be necessary for selling and disposing of and converting the same into money

(vi)  The Company may sell or otherwise convert into money any goods, wares or merchandise which shall or may be taken by it in satisfaction, liquidation or payment of any debt and may sell and convey any lands, houses and other real property whatsoever or any goods wares or merchandise which it may acquire in manner aforesaid

(vii)   The Company may give pensions and gratuities to directors, officers or servants of the Company or to persons who have been directors, officers or servants of the Company and the wives, families or dependants of any such persons and may establish maintain support or subscribe to pension, superannuation and other funds for the benefit or advantage of any such directors, officers, servants or other such persons and may also make payments towards insurance and may make contributions to national educational, scientific, benevolent, religious or charitable institutions or objects and may subscribe to support or become a member of any Chamber of Commerce institution or association having among its objects the promotion or protection of the interests of persons engaged in banking commerce or industry and subscribe towards or guarantee the expense of or otherwise take part in the promotion of any exhibition and may give or contribute to any testimonial gift or fund whether in the United Kingdom or any other part of the world

(viii)   The Company may promote or join in promoting companies or associations in any part of the world for the purpose of carrying on any part of the business or exercising any of the powers of the Company or for the purpose of carrying on or exercising any business or power which the Company is authorised to carry on or exercise or which in the opinion of the Company may conveniently and advantageously be combined with any business which the Company is authorised to carry on or for the purpose of acquiring all or any of the property, rights and liabilities of the Company

(ix)   The Company may purchase or otherwise acquire for such consideration as may be thought fit (including the issue

9

of shares, securities or other obligations of the Company credited as fully or partly paid up) the whole or any part of the business, property and liabilities of any person or company carrying on any business which the Company has power to carry on or any shares, securities or other obligations of any Company carrying on any such business

(x)     The Company may enter into arrangements for sharing profits, joint adventure amalgamation with any company carrying on the business of banking or any other business which the Company has power to carry on or which can in the opinion of the Company conveniently and advantageously be combined with any business which the Company has power to carry on and subscribe for or otherwise acquire for such consideration as may be thought fit any shares stock or other securities of any such company or of an amalgamating company and may enter into any arrangements incidental to any of the matters aforesaid

See footnote

(xi)    The Company may do all things incidental or conducive to the carrying on of any business which is consistent with the objectives of the Company

7       This Our Charter and the Common Seal of the Company shall be kept at the place of business of the Court of Directors and such seal shall not be affixed to any instrument except as authorised by the Bye-laws and Rules of the Company for the time being in force

8       The Company may from time to time vary and change at its pleasure the Common Seal of the Company and may also adopt for use in any territory, district or place not within the United Kingdom one or more official seals which shall be facsimiles of the Common Seal with the addition on the face thereof of the name of the territory district or place where it is to be used   Documents sealed with an official seal shall bind the Company in like manner as if they had been sealed with the Common Seal   The Court of Directors shall provide for the authorisation of persons to affix an official seal (including provisions for the protection of third parties against the revocation or determination of such authority) and for the method of attesting or certifying the affixing thereof

Note    Article 6(xi) was inserted by Order of Her Majesty the Queen in Council on 22 March 2005

9     In carrying on managing and conducting its business the Company shall conform to such general laws as are now in force or as may from time to time be in force or be hereafter enacted in the United Kingdom or in any part of the Commonwealth or elsewhere where the business of the Company shall be established and conducted on the subject of banking and currency and in relation to the making or publication of periodical returns in the same manner and form as other Banks are or shall be required by law to do

**See footnote**   10     The Company shall not at any time purchase any shares in the Company or make advances of money or securities for money to any person on the security of any shares in the Company nor discount or in any manner advance money upon Bills of Exchange, Promissory Notes or other Negotiable Paper in or upon which the name of any Director or Officer of the Company shall appear as drawer or acceptor either on his individual or separate account or jointly with any Partner or Partners or otherwise than as a Director or Officer of the Company to an amount exceeding one-third of the amount of the sum for the time being under discount or advanced by the Company

11     The capital of the Company at the date upon which this Our Charter first takes effect is £3,500,000 comprising £3,500,000 Stock   Any of the shares of the Company from time to time created may be issued with and any of the said Stock or any other shares or stock of the Company may have attached thereto such preferred deferred or other special rights or such restrictions whether in regard to dividend return of capital voting or otherwise as the Company may from time to time by Special Resolution determine but so that the special rights attached to any shares conferring preferred or other special rights shall not be varied or abrogated except with such sanction as is provided by the Bye-laws and Rules of the Company in the Schedule hereto or other the Bye-laws and Rules of the Company for the time being

12     The Members of the Company in General Meeting may by Special Resolution from time to time -

        (i)    Increase the share capital of the Company by such sum divided into shares of such amount as may be authorised by such Special Resolution without any restriction or limitation on the total amount to which the same may be so increased, and

---

Note   Article 10 was amended by Supplemental Charter on 12 February 1997

(ii)    Consolidate and divide all or any of its shares whether issued or unissued and whether forming part of its present or increased capital into shares of larger amount than the existing shares  and

(iii)   Sub-divide the shares in the capital of the Company or any of them whether issued or unissued and whether forming part of its present or increased capital into shares of smaller amount than the amount of the shares to be sub-divided as aforesaid so however that in the sub-division the proportion between the amount paid and the amount if any unpaid on each reduced share shall be the same as it was in the case of the share from which the reduced share is derived, and

(iv)   Convert any paid up shares into stock and reconvert any stock into paid up shares of any denomination, and

(v)    Cancel any shares which at the date of the passing of the resolution in that behalf have not been taken or agreed to be taken by any person and diminish the amount of its share capital by the amount of the shares cancelled, and

(vi)   With the approval of the Treasury reduce the capital of the Company in any way

PROVIDED ALWAYS that the Members of the Company shall be individually liable for the debts obligations and liabilities of the Company but to the extent only of the amounts (if any) for the time being unpaid on the shares in the Company held by them respectively

13    The carrying on of the business of the Company and the management of its affairs (so far as not regulated by this Our Charter) shall be regulated by the said Bye-laws and Rules set forth in the Schedule to this Our Charter or other the Bye-laws and Rules of the Company for the time being in force   The said Bye-laws and Rules for the time being in force shall contain all such provisions as are necessary or usual in like cases and in particular shall provide for the following matters namely -

(i)    the carrying on the business of the Company by a Board or Court of Directors,

(ii)   the payment to or by the Shareholders of all monies to become due in respect of their shares in the Company,

(iii)  the holding of Annual General Meetings of the Company once at least in every year,

(iv)   the holding of Extraordinary General Meetings of the Company upon the requisition of nine Members or more holding in the whole Shares or Stock in the Company of the nominal amount of at least £20,000,

(v)   the election appointment and qualification of the Directors,

(vi)   the retirement of at least one-fourth of the Directors of the Company yearly,

(vii)   the yearly audit of the accounts of the Company by one or more Auditors not being Directors thereof,

(viii)   the yearly communication of the Auditors' Report and of a Balance Sheet and Profit and Loss Account to every member,

(ix)   the appointment of a Secretary and Officers

14   The Company may from time to time by Special Resolution without reference to Ourselves or to the Treasury or any other person alter or add to its present Bye-laws and Rules as set out in the Schedule to this Our Charter and any alteration or addition so made shall be as valid and effective and be binding upon the Members of the Company for the time being in the same manner as if such alteration or addition had been contained in the said present Bye-laws and Rules and shall itself be subject in like manner to alteration by Special Resolution

15   The several regulations contained in this Our Charter and in the said Bye-laws and Rules of the Company as from time to time altered or added to as aforesaid shall be taken to be the existing regulations of the Company except so far as the same may be repugnant to the Laws of the United Kingdom or of any part of the World wherein the Company shall carry on business

16   Every alteration of or addition to the said Bye-laws and Rules shall within six months from the date of the Special Resolution effecting such alteration or addition be enrolled in the Central Office of Our Supreme Court of Judicature

17   On any suspension of the payments of the Company for any continuous period of sixty days or for any number of days at intervals which shall amount altogether to sixty days within any one year or if it shall be reported unto Us by the Treasury that the Company have not well and truly maintained abided by performed and observed all and every the Rules, Orders, Provisions and Directions contained and set forth herein or in the Bye-laws and Rules of the Company for the time being in force or if it appears to

Us, Our Heirs or Successors that any other good and sufficient reason exists for revoking and making void this Our Charter Then and in any such cases it shall be lawful for Us, Our Heirs and Successors if We or They shall be so minded by writing under the Great Seal at Our or Their discretion and without any further or other proceeding to revoke and make void this Our Charter and the existing Charters so far as still remaining unrevoked and in force and every matter and thing herein and therein contained

18    In the event of any such revocation of this Our Charter and after notice of such revocation shall have been left at the Office or Principal Office in London of the Company it shall not be lawful for the Company to continue to carry on business under this Our Charter for any longer period than may be required for giving the necessary notices thereof to the various Establishments of the Company

19    If at any time it appears to Us, Our Heirs or Successors that good and sufficient reasons exist for adding to or amending the terms of this Our Charter it shall be lawful for Us, Our Heirs or Successors by writing under the Great Seal at any time to add such modifications, conditions or provisions thereto as We, Our Heirs or Successors shall think fit

20    In the event of any general revocation of this Our Charter or the cessation of the powers and privileges hereby conferred under the provisions hereinbefore contained the property of the Company shall be converted into money and the debts due to the Company collected and got in with all convenient speed and all monies which shall be so received and all other assets of the Company and if necessary all monies then remaining unpaid by the Members on account of their shares (which shall forthwith be called for and paid) shall be applied in paying and satisfying the debts and liabilities of the Company in due course of Law and the surplus (if any) shall be divided among the Members of the Company in accordance with their rights and priorities and all the powers and privileges and authorities in this Our Charter contained shall notwithstanding any such general revocation or cessation thereof as aforesaid continue to be vested in and exercisable by the Company so far but so far only as required for the purpose of winding up the affairs of the Company in manner hereinbefore set forth

21    When all the assets of the Company (including such calls as herein mentioned) shall have been got in and converted into money as aforesaid and the debts due by the Company shall have been paid so far as such assets shall extend and the surplus (if any) divided among the Members as aforesaid it shall be lawful or Us Our Heirs or Successors upon the representation of the Treasury that it is expedient so to do by writing under the Great

Seal absolutely to revoke and make void this Our Charter and the existing Charters so far as not revoked hereby and every matter and thing herein and therein contained and the Company shall be absolutely dissolved

See footnote    22    The Company may from time to time by Special Resolution alter, add to or revoke any of the provisions of this Our Charter or any Supplemental Charter granted to the Company and such alteration, addition or revocation shall when allowed by Us Our Heirs or Successors in Council become effectual so that the relevant Charter shall thenceforth continue to operate as if it had been originally granted and made accordingly

Note    Article 22 was inserted by Supplemental Charter on 12 February 1997

IN WITNESS  whereof We have caused these Our Letters to be made Patent

WITNESS Ourself at Westminster the twenty-fifth day of June In the fifth Year of Our Reign

COLDSTREAM

BY WARRANT UNDER THE QUEEN'S SIGN MANUAL



The Bye-laws and Rules comprising the Schedule to this Our Royal Charter are annexed hereto

16

INDEX

TO

THE BYE-LAWS AND RULES

|  |  | PAGE |
|---|---|---|
| I | Preliminary | 18 |
| II | Capital | 19 |
| III | Members and Membership | 19 |
| IV | Variation of Rights | 20 |
| V | Shares | 20 |
| VI | Lien | 21 |
| VII | Calls on Shares | 22 |
| VIII | Transfer of Shares | 23 |
| IX | Transmission of Shares | 24 |
| X | Forfeiture of Shares | 25 |
| XI | Stock | 26 |
| XII | Increase of Capital | 27 |
| XIII | Other Alterations of Capital | 27 |
| XIV | General Meetings | 27 |
| XV | Notice of General Meetings | 28 |
| XVI | Proceedings at General Meetings | 29 |
| XVII | Votes of Members | 30 |
| XVIII | Corporations acting by Representative at Meetings | 32 |
| XIX | Directors | 33 |
| XX | Powers of Directors | 37 |
| XXI | Rotation of Directors | 38 |
| XXII | Proceedings of Directors | 39 |
| XXIII | Secretary | 41 |
| XXIV | The Seal | 41 |
| XXV | Minutes | 41 |
| XXVI | Dividends and Reserves | 42 |
| XXVII | Capitalisation of Profits | 43 |
| XXVIII | Accounts | 44 |
| XXIX | Audit | 44 |
| XXX | Winding-up | 46 |
| XXXI | Indemnity | 47 |
| XXXII | Alterations of Bye-laws and Rules | 47 |
| XXXIII | Notices | 47 |

# BYE-LAWS AND RULES

## OF

## STANDARD CHARTERED BANK

### I – PRELIMINARY

1   In these Bye-laws and Rules, if not inconsistent with the subject or context, the words standing in the first column of the table next hereinafter contained shall bear the meanings set opposite to them respectively in the second column thereof

| Words | Meanings |
|---|---|
| The Company | Standard Chartered Bank |
| The Charters | The Royal Charters incorporating the Company and regulating its affairs as for the time being in force |
| The Presents | These Bye-laws and Rules as originally framed or as from time to time altered by Special Resolution |
| Special Resolution | The meaning for the time being attached thereto by the Charters |
| The Act | The Companies Act 2006 |
| The Court | The Court or Board of Directors of the Company |
| Group Company | A subsidiary undertaking or parent undertaking of the Company or a subsidiary undertaking of any parent undertaking of the Company |
| Office | The Head Office or principal place of business of the Company for the time being |
| Seal | The Common Seal of the Company |
| United Kingdom | Great Britain and Northern Ireland |
| Year | Year from the 1 January to 31 December inclusive |

| In Writing | Written, produced by any substitute for writing or partly one and partly another |
|---|---|
| US dollars or US$ | The lawful currency of the United States of America |

And the expression "Secretary" shall include a temporary or assistant Secretary and any person appointed by the Directors to perform any of the duties of the Secretary

Save as aforesaid all expressions defined in the Charters or any of them shall, if not inconsistent with the subject or context, bear the same meanings in these presents

2    The Head Office or principal place of business of the Company shall be at such place in the City of London or the City of Westminster as shall from time to time be determined by the Court

3    No part of the funds of the Company shall be employed in the purchase of or in loans upon the security of the Company's shares

## II - CAPITAL

4    The capital of the Company at the date of the adoption of these Bye-laws and Rules is US$12,055,941,142 00

5    The shares in the capital of the Company other than shares converted into Stock shall be numbered, each share being distinguished by its appropriate number

6    Any of the shares of the Company from time to time created may be issued with any of the said Stock or any other shares or Stock of the Company may have attached thereto such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, return of capital, voting or otherwise as the Company may from time to time by Special Resolution determine, but so that the special rights attached to any shares conferring preferred or other special rights shall not be varied or abrogated except with such sanction as is provided by these presents

## III – MEMBERS AND MEMBERSHIP

7    The members of the Company shall be those persons who have agreed or shall hereafter agree to become shareholders in the Company and whose names are or shall hereafter be entered in the Register of Members hereinafter mentioned

8    The Company shall keep in one or more books a register of its members and enter therein the following particulars

(a)   The names and addresses of the members of the number of shares held by each member distinguishing each share by its number, and the amount paid on the shares of each member

(b)   The date on which each person was entered in the register as a member

(c)   The date on which any person ceased to be member

Provided that where the Company has converted any of its shares into stock, the register shall show the amount of Stock held by each member instead of the amount of shares and the particulars relating to shares specified in paragraph (a) of this Bye-law

9   All provisions of these presents and of the Charters shall be binding upon the members for the time being as though these presents had been signed and sealed by each member and contained covenants on the part of each member his executors and administrators to observe all the provisions of the Charters and these presents and every member by becoming such shall be deemed to have entered into such covenant accordingly

## IV – VARIATION OF RIGHTS

10   Whenever the capital of the Company is divided into different classes of shares the special rights attached to any class, may either with the consent in writing of the holders of three-fourths in nominal amount of the issued shares of the class, or with the sanction of a Special Resolution (as defined by the Act) passed at a separate meeting of such holders (but not otherwise), be varied or abrogated either whilst the Company is a going concern or during or in contemplation of a winding up  To every such separate meeting all the provisions of these presents relating to General Meetings and as to votes and voting thereat shall, *mutatis mutandis,* apply except that the necessary quorum shall be two persons at least holding or representing by proxy one-third in nominal amount of the issued shares of the class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those members who are present shall be a quorum), and that the holders of shares of the class shall on a poll have the same rights as to voting as are specified in Bye-law 68  The special rights conferred upon the holders of any shares or class of shares issued with preferred or other special rights shall not, unless otherwise expressly provided by the conditions of issue thereof, be deemed to be varied by the creation or issue of further shares ranking *pari passu* therewith

## V – SHARES

11   The shares or other interest of any member in the Company shall be personal estate transferable in manner hereinafter provided

12    No person shall be recognised by the Company as holding any share upon any trust and the Company shall not be bound by or recognise any equitable contingent future or partial interest in any shares or any interest in any fractional part of a share, or (except only as by the Charters or these presents otherwise provided) any other right in respect of any share, except an absolute right to the entirety thereof in the registered holder

13    Every person whose name is entered as a member in the register of members shall be entitled without payment to one certificate for all his shares, or upon payment of such fee (if any) for every certificate after the first as the Court shall from time to time determine, to several certificates, each for one or more of his shares provided always that no charge shall be made in respect of any Balance Certificate issued to a member on the sale or transfer of part only of his holding of shares in the Company Every certificate shall be executed and issued under the Seal or in such other manner as the Court, having regard to the terms of issue and any other relevant requirements, may authorise and shall specify the number and class of the shares to which it relates and the amount or respective amounts paid up on the shares   The Court may by resolution decide, either generally or in any particular case or cases, that any signatures on any share certificates need not be autographic but may be applied to the certificate by some mechanical or other means or may be printed on them or that the certificate need not be signed by any person   Provided that in the case of a share held jointly by several persons the Company shall not be bound to issue more than one certificate therefor and delivery of the certificate for a share to one of several joint holders shall be sufficient delivery to all

14    If a share certificate be defaced, lost or destroyed, it may be replaced on payment of such fee (if any) and on such terms (if any) as to evidence and indemnity as the Directors think fit

15    Every such certificate shall be prima facie evidence of the title of the person named therein to the shares specified in such certificate

VI – LIEN

16    The Company shall have a lien on every share not being a fully paid share for all moneys, whether presently payable or not, called or payable at a fixed time in respect of such share, and the Company shall also have a first and paramount lien and charge on all shares (other than fully paid shares) standing registered in the name of a single member for all the debts and liabilities of such member or his estate to the Company, and that whether the same shall have been incurred before or after notice to the Company of any equitable or other interest in any person other than such member and whether the period for the payment or discharge of the same shall have actually arrived or not, and notwithstanding that the same are joint debts or liabilities of such member or his estate and any

other person, whether a member of the Company or not  The Company's lien (if any) on a share shall extend to all dividends payable thereon

17    The Company may sell, in such manner as the Court think fit, any shares on which the Company has a lien, but no sale shall be made unless some sum in respect of which the lien exists is presently payable, nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of the sum presently payable, and giving notice of intention to sell in default, shall have been given to the holder for the time being of the share or the person entitled by reason of his death or bankruptcy to the share

18    The net proceeds of sale after payment of the costs of such sale shall be applied in or towards payment or satisfaction of the debt or liability in respect whereof the lien exists, so far as the same is presently payable and any residue shall (subject to a like lien for debts or liabilities not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the time of the sale  The purchaser shall be registered as the holder of the shares and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale

## VII – CALLS ON SHARES

19    The Court may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the amount of the shares or by way of premium), and each member shall (subject to receiving at least fourteen days' notice specifying the time or times and place of payment) pay to the Company at the time or times and place so specified the amount called on his shares  A call may be made payable by instalments and may be revoked or postponed as the Court may determine

20    A call shall be deemed to have been made at the time when the resolution of the Court authorising the call was passed

21    The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof

22    If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate, not exceeding 5 per cent  per annum, as the Court determine, but the Court shall be at liberty to waive payment of such interest wholly or in part

23    Any sum which by the terms of issue of a share becomes payable upon allotment or at any fixed date, whether on account of the amount of the share or by way of premium, shall for all the purposes of these presents

be deemed to be a call duly made and payable on the date on which, by the terms of issue, the same becomes payable, and in the case of non-payment all the relevant provisions of these presents as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call made and notified

24    The Court may make arrangements on the issue of shares for a difference between the holders in the amounts of calls to be paid, and in the times of payment

25    The Court may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him, and upon all or any of the moneys so advanced, may (until the same would but for such advance become presently payable), pay or allow in advance interest at such rate not exceeding (unless the Company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the Court and the member paying such sum in advance

## VIII – TRANSFER OF SHARES

26    Subject to the provisions of these presents any member may transfer all or any of his shares

27    Shares in the Company shall be transferred by transfer in the usual common form or in any other form and approved by the Court

28    The instrument of transfer of a share shall be signed by or on behalf of the transferor and the transferee, and the transferor shall be deemed to remain the holder of the share until the name of the transferee is entered in the register of members in respect thereof

29    The Court may, in their discretion, and without assigning any reason therefor, decline to register any transfer of shares (not being fully paid shares) to a person of whom they shall not approve, and they may also decline to register any transfer of shares on which the Company has a lien

30    All instruments of transfer of shares which shall be registered will be retained by the Company and the Court shall cause particulars thereof to be entered in a book to be kept under the supervision of the Court and to be called the "Register of Transfers"

31    The Court may also decline to recognise any instrument of transfer, unless

(a)    The instrument of transfer is deposited at the office or such other place as the Court may appoint accompanied by the certificate of the shares to which it relates, and such other evidence as the

Court may reasonably require to show the right of the transferor to make the transfer, and

(b)    The instrument of transfer is in respect of only one class of share

32    The Register of Transfers may be closed at such times and for such period as the Court may from time to time determine, provided always that it shall not be closed for more than thirty days in any year

33    There shall be paid to the Company in respect of the registration of any probate, letters of administration, certificate of marriage or death, power of attorney or other document relating to or affecting the title to any shares such fee as the Court may from time to time require or prescribe

34    Nothing in these presents shall preclude the Court from recognising the renunciation of the allotment of any share by the allottee in favour of some other person

## IX - TRANSMISSION OF SHARES

35    In case of the death of a member the survivors or survivor where the deceased was a joint holder, and the executors or administrators of the deceased where he was a sole holder, shall be the only persons recognised by the Company as having any title to his shares, but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share jointly held by him

36    Any person becoming entitled to a share in consequence of the death or bankruptcy of a member, may, upon such evidence as to this title being produced as may from time to time be required by the Court, and subject as hereinafter provided, elect either to be registered himself as holder of the share or to have some person nominated by him registered as the transferee thereof

37    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects    If he shall elect to have another person registered, he shall testify his election by executing to his nominee a transfer of such share    All the limitations, restrictions and provisions or these presents relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer were a transfer signed by such member

38    A person becoming entitled to a share in consequence of the death or bankruptcy of a member shall be entitled to receive and may give a discharge for all dividends and other moneys payable in respect of the shares, but he shall not be entitled to receive notices of or to attend or vote at meetings of the Company or save as aforesaid to any of the rights or privileges of a member until he shall have become a member in

respect of the share    Provided always that the Court may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the Court may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of notice have been complied with

## X – FORFEITURE OF SHARES

39    If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the Court may at any time thereafter during such time as any part of such call or instalment remains unpaid serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest and expenses which may have accrued

40    The notice shall name a further day on or before which and the place where the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time and at the place appointed the shares on which the call was made will be liable to be forfeited

41    If the requirements of any such notice as aforesaid are not complied with any share in respect of which such notice has been given may at any time thereafter before payment of all calls and interest and expenses due in respect thereof has been made be forfeited by a resolution of the Court to that effect and such forfeiture shall include all dividends which shall have been declared on the forfeited shares and not actually paid before the forfeiture

42    Where any share has been forfeited, an entry to that effect shall be made in the Register of Members opposite the forfeited shares and notice of the forfeiture shall forthwith be given to the holder of the share or person entitled to the share by reason of the death or bankruptcy of the holder (as the case may be) but no forfeiture shall be in any manner invalidated by any omission or neglect to make such entry or give such notice as aforesaid

43    A forfeited share may be sold, re-allotted or otherwise disposed of, either to the person who was before forfeiture the holder thereof or entitled thereto, or to any other person, upon such terms and in such manner as the Court shall think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the Court think fit

44    A member whose share have been forfeited shall cease to be a member in respect of the forfeited shares, but shall notwithstanding the forfeiture remain liable to pay to the Company all moneys which at the date of forfeiture were presently payable by him to the Company in respect of the shares, with interest thereon at seven per cent  per annum from the date of forfeiture until payment, but his liability shall cease if and when the

Company shall have received payment in full of all such moneys in respect of the shares

45    A statutory declaration in writing that the declarant is a Director, General Manager, or Secretary of the Company and that a share has been duly forfeited on a date stated in the declaration shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share, and such declaration and the receipt of the Company for the consideration (if any) given for the share on the sale, re-allotment or disposal therefor shall constitute a good title to the share, and the person to whom the share is sold, re-allotted or disposed of shall be registered as the holder of the share and shall not be bound to see to the application of the consideration (if any), nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale, re-allotment, or disposal of the share

## XI – STOCK

46    (a)    The Company may by Special Resolution convert any paid up shares into stock and re-convert any stock into paid-up shares of any denomination

       (b)    The holders of stock may transfer the same or any part thereof in the same manner and subject to the same regulations as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit, but no stock shall be transferable except in the sums of US$1 or multiples of US$1

       (c)    The holders of stock shall, according to the amount of the stock held by them, have the same rights privileges and advantages as regards dividends, participation in assets on a winding up, voting at meetings, and other matters, as if they held the shares from which the stock arose but no such privilege or advantage (except participation in dividends and profits and in assets on a winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred such privilege or advantage

       (d)    All such of the provisions of these presents as are applicable to paid-up shares shall apply to stock and the words "share" and "member" therein shall include "stock" and "stockholder"

## XII – INCREASE OF CAPITAL

47    The Company in general meeting may from time to time by Special Resolution increase its capital by such sum to be divided into shares of such amounts as the resolution shall prescribe

48    The Company may by the resolution increasing the capital direct that the new shares, or any of them shall be offered in the first instance either at

par or at a premium to all the then members or to any class thereof for the time being, in proportion to the number of shares or shares of the class held by them respectively, or make any other provisions as to the issue of the new shares  In default of any such direction or so far as the same shall not extend, the new shares shall be at the disposal of the Court, who may allot, grant options over, or otherwise dispose of them to such persons and on such terms as they shall think fit

49      The new shares shall be subject to the same provisions with reference to payment of calls, lien, transfer, transmission, forfeiture and otherwise, as the shares in the present capital

### XIII – OTHER ALTERATIONS OF CAPITAL

50      The Company may by Special Resolution -

(a)      Consolidate and divide all or any of its shares into shares of larger amount than its existing shares, and

(b)      Sub-divide its shares, or any of them, into shares of smaller amount than the amount of the shares to be sub-divided but so however that in the sub-division the proportion between the amount paid and the amount if any unpaid on each reduced share shall be the same as it was in the case of the share from which the reduced share is derived, and

(c)      Cancel any shares which at the date of the passing of the resolution, have not been taken, or agreed to be taken, by any person, and diminish the amount of its capital by the amount of the shares so cancelled, and

(d)      With the approval of the Treasury reduce its share capital in any way

### XIV – GENERAL MEETINGS

51      A General Meeting shall be held in every year, at such time and place as may be determined by the Court  The general meetings referred to in this Bye-law shall be called Annual General Meetings    All other general meetings shall be called extraordinary

52      The Court may call an Extraordinary General Meeting whenever they think fit, and shall convene such a meeting on the requisition of not less than nine members holding between them not less than £20,000 (nominal amount) of shares or stock in the Company (or on the requisition of not less than nine members holding between them not less than US$20,000 (nominal amount) of shares or stock in the Company denominated in US dollars  The requisition must state the objects of the meeting and must be signed by the requisitionists and deposited at the

Office and may consist of several documents in the like form each signed by one or more of the requisitionists

53    If the Court do not within twenty-one days from the date of the requisition being so deposited proceed duly to convene the meeting, the requisitionists or a majority of them may themselves convene the meeting, but any meeting so convened shall not be held after the expiration of three months from the date of the deposit, and shall be held only for the objects stated in the requisition

54    Any meeting so convened by the requisitionists shall be convened in the same manner as nearly as possible as that in which meetings are to be convened by the Court

## XV – NOTICE OF GENERAL MEETINGS

55    In the case of an Annual General Meeting or a Meeting convened to pass a Special Resolution twenty-one clear days' notice at the least, and in any other case fourteen clear days' notice at the least, shall be given either by advertisement in manner hereinafter mentioned or in writing to all such members as are under the provisions in these presents contained entitled to receive notices from the Company and to the Auditors of the Company

PROVIDED THAT a Meeting of the Company shall, notwithstanding that it is called by shorter notice than that specified in this regulation be deemed to have been duly called if it is so agreed

(a)    in the case of a Meeting called as the Annual General Meeting, by all the members entitled to attend and vote thereat, and

(b)    in the case of any other Meeting, by a majority number of the members having a right to attend and vote at the Meeting, being a majority together holding not less than 95 per cent in nominal value of the shares giving that right

56    The accidental omission to give notice to, or the non-receipt of notice by any person, shall not invalidate the proceedings at any general meeting

57    Every notice of Meeting shall specify the place, the day and the hour of meeting, and in case of special business the general nature of such business  The notice convening an Annual General Meeting of the Company shall specify it as such, and the notice convening a Meeting to pass a Special Resolution shall also specify the intention to propose the Resolution as a Special Resolution

## XVI – PROCEEDINGS AT GENERAL MEETINGS

58    All business shall be deemed special that is transacted at an Extraordinary General Meeting, and also all business that is transacted at

28

an Annual General Meeting, with the exception of declaring dividends, the consideration of the accounts and balance sheet and the ordinary reports of the Court and Auditors and other documents required to be annexed to the balance sheet, and the election of Directors and Auditors and other officers in the place of those retiring by rotation or otherwise and the fixing of the remuneration of the Auditors

59    No business shall be transacted at any general meeting unless a quorum is present when the meeting proceeds to business    One member present in person or by representative shall be a quorum for all purposes

60    If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened on the requisition of or by members, shall be dissolved    In any other case it shall stand adjourned to the same day in the next week, at the same time and place, or to such other day and place as the Court may determine and if at such adjourned meeting a quorum is not present within fifteen minutes from the time appointed for holding the meeting, the members present shall be a quorum

61    The Chairman (if any) of the Court and in his absence the deputy chairman (if any) shall preside as chairman at every General Meeting of the Company   If there be no such officers, or if at any meeting neither be present within fifteen minutes after the time appointed for holding the meeting, or be willing to act as chairman, the members present shall choose some Director present to be chairman, or if no Director be present, or if all the Directors present decline to take the chair, they shall choose some member present to be chairman

62    The Chairman may, with the consent of any meeting at which a quorum is present adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting from which the adjournment took place   When a meeting is adjourned for twenty-one days or more, notice of the adjourned meeting shall be given as in the case of an original meeting but it shall not be necessary to specify in such notice the nature of the business to be transacted at the adjourned meeting   Save as aforesaid, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting

63    At any General Meeting a resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded by the chairman or any member present in person or by representative   Unless a poll is so demanded, a declaration by the chairman that a resolution has been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the minute book shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution

64   Subject as in Bye-law 66 provided if a poll is duly demanded, it shall be taken in such manner as the chairman may direct, and the result of a poll shall be deemed to be the resolution of the meeting at which the poll was demanded

65   In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded shall be entitled to a second or casting vote

66   A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith   A poll demanded on any other question shall be taken at such time and place as the chairman directs.

67   The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll has been demanded   A demand for a poll may be withdrawn

## XVII – VOTES OF MEMBERS

68   Subject to any special rights or restrictions as to voting attached to any shares by or in accordance with the Charters and these presents on a show of hands every member, who (being an individual) is present in person or (being a corporation) is present by a representative or proxy not being himself a member, shall have one vote   Subject as aforesaid on a poll a member holding shares or stock of less than the nominal amount of US$25 shall not have any vote, but every other member who is present in person or by proxy shall have votes in accordance with the following scale

| Nominal amount of Shares or Stock held | Number of Votes |
| --- | --- |
| US$25 or more but less than US$50 | 1 vote |
| US$50 or more but less than US$100 | 2 votes |
| US$100 or more but less than US$250 | 3 votes |
| US$250 or more but less than US$375 | 4 votes |
| US$375 or more but less than US$500 | 5 votes |
| US$500 or more but less than US$750 | 6 votes |
| US$750 or more but less than US$1,000 | 7 votes |
| US$1,000 or more but less than US$1,250 | 8 votes |
| US$1,250 or more but less than US$1,500 | 9 votes |
| US$1,500 or more | 10 votes |

69   In the case of joint holders of a share the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall

be determined by the order in which the names stand in the register of members

70    A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee, receiver, *curator bonis* or other person in the nature of a committee, receiver or *curator bonis* appointed by such Court, and such committee, receiver, *curator bonis* or other person may on a poll vote by proxy, provided that such evidence as the Court may require of the authority of the person claiming to vote shall have been deposited at the office not less than forty-eight hours before the time appointed for holding the meeting or adjourned meeting at which such person claims to vote

71    No member shall be entitled to vote at any general meeting if any call or other sum presently payable by him in respect of shares in the Company is a month or upwards in arrear

72    On a poll votes may be given either personally or by proxy

73    The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing, or if the appointor is a corporation either under the common seal or under the hand of an officer or attorney so authorised

74    A proxy need not be a member of the Company

75    The instrument appointing a proxy and the power of attorney or other authority (if any) under which it is signed, or a notarially certified copy of such power or authority, shall be deposited at the office not less than forty-eight hours before the time appointed for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, and in default the instrument of proxy shall not be treated as valid   No instrument appointing a proxy shall be valid after expiration of twelve months from the date named in it as the date of its execution

76    An instrument of proxy may be in the following form, or in any other form which the Court shall approve

STANDARD CHARTERED BANK

I                                     of

Being a member of the above named Company hereby appoint

                    of                                   as my proxy to vote for me, and on my behalf, at the Annual [or Extraordinary as the case may be] General Meeting of the Company to be held on the day of 20 , and at any adjournment thereof

31

Signed this            day of           20

Instruments of proxy need not be witnessed

77      The Court may at the expense of the Company send by post or otherwise, to the members instruments of proxy (with or without stamped envelopes for their return), for use at any General Meeting or at any meeting of any class of members of the Company, either in blank or nominating in the alternative any one or more of the Directors or any other persons   If for the purpose of any meeting invitations to appoint as proxy a person or one of a number of persons specified in the invitations are issued at the expense of the Company, such invitations shall be issued to all (and not to some only) of the members entitled to be sent a notice of the meeting and to vote thereat by proxy

78      A vote given in accordance with the terms of an instrument of proxy shall be valid, notwithstanding the previous death or insanity of the principal or revocation of the instrument of proxy, or of the authority under which the instrument of proxy was executed, or the transfer of the share in respect of which the instrument of proxy is given provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the Company at the office before the commencement of the meeting or adjourned meeting at which the proxy is used

## XVIII – CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

79      Any corporation which is a member of the Company may by resolution of its Directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the Company of any class of Members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the Company

## XIX - DIRECTORS

80      The Directors shall be not less than four nor more than twenty four in number   Within these limits the number shall from time to time be determined by the Court

81      Any Director who by request performs special services, or goes or resides abroad as Inspector or in any other capacity or for any purposes of the Company, may be paid such extra remuneration by way of salary, percentage of profits or otherwise as the Court may determine, which shall be charged at part of the Company's ordinary working expenses

82      A Director shall not be required to hold any shares of the Company by way of qualification

83      The office of a Director shall be vacated in any of the following events, namely

    (a)     He resigns his office by notice in writing sent to or received at the Office or at an address specified by the Company for the purposes of communication by electronic means or tendered at a meeting of the Court, or offers to resign (by notice in writing in the manner aforesaid) and the Court resolves to accept such offer, or

    (b)     He is or has been suffering from mental or physical ill health or becomes a patient for the purpose of any statute relating to mental health and the Court resolves that his office is vacated, or

    (c)     He is absent without the permission of the Court from meetings of the Court (whether or not an alternate director appointed by him attends) for three consecutive months and the Court resolves that his office is vacated, or

    (d)     He becomes bankrupt or compounds with his creditors generally, or

    (e)     He is prohibited by law from being a Director, or

    (f)     He is removed from office pursuant to these presents, or

    (g)     By notice in writing sent to or received at the Office or at an address specified by the Company for the purposes of communication by electronic means or tendered at a meeting of the Court, his resignation is requested by three quarters of the other Directors

84      (a)     Provided that he has disclosed to the Directors the nature and extent of any interest of his, a Director notwithstanding his office

        (i)     May be a party to, or otherwise interested in, any contract with the Company or in which the Company is otherwise interested,

        (ii)    May be a director or other officer of, or employed by, or a party to any contract with, or otherwise interested in, any Group Company or in any body corporate promoted by the Company or any Group Company or in which the Company or any Group Company is interested,

        (iii)   May act by himself or his firm in a professional capacity for the Company (otherwise than as auditor)

(b)   For the purposes of this Bye-law

    (i)   A Director shall be deemed to have disclosed the nature and extent of an interest which consists of him being a director, officer or employee of any Group Company, and

    (ii)   A general notice given to the Directors that a Director is to be regarded as having an interest of the nature and extent specified in the notice in any contract in which a specified person or class of persons is interested shall be deemed to be a disclosure that the Director has an interest in any such contract of the nature and extent so specified

(c)   Where a Director is a director or other officer of, or employed by, a Group Company, he

    (i)   May in exercising his independent judgement take into account the success of other Group Companies as well as the success of the Company, and

    (ii)   Shall in the exercise of his duties, where that other Group Company is a parent company, have a duty of confidentiality to the parent company in relation to confidential information of the parent company, but he shall not be restricted by any duty of confidentiality to the Company from providing information to any parent company

85   (a)   The Directors may, subject to the quorum and voting requirements set out in the Bye-laws, authorise any matter which would otherwise involve a Director breaching his duty to avoid conflicts of interest ("Conflict")

(b)   Any Director (including the relevant Director) may propose that the relevant Director be authorised in relation to any matter the subject of a Conflict   Such proposal and any authority given by the Directors shall be effected in the same way that any other matter may be proposed to and decided upon by the Directors under the provisions of the Bye-laws save that the relevant Director shall not count towards the quorum nor vote on any resolution giving such authority

(c)   Where the Directors give authority in relation to a Conflict

    (i)   The terms of the authority shall be recorded in writing (but the authority shall be effective whether or not the terms are so recorded), and

    (ii)   The Directors may revoke or vary such authority at any time but this will not affect anything done by the relevant Director

prior to such revocation or variation in accordance with the terms of such authority

(d) Where the Directors give authority in relation to a Conflict or where any of the situations referred to in Bye-law 84 ("Permitted Situation") applies

(i) The Directors may (whether at the relevant time or subsequently) (x) require that the relevant Director is excluded from the receipt of information, the participation in discussion and/or the making of decisions (whether at meetings of the Directors or otherwise) related to the Conflict or Permitted Situation, and (y) impose upon the relevant Director such other terms for the purpose of dealing with the Conflict as they may determine;

(ii) The relevant Director will be obliged to conduct himself in accordance with any terms imposed by the Court in relation to the Conflict or Permitted Situation; and

(iii) The Directors may provide that where the relevant Director obtains (otherwise than through his position as a Director of the Company) information that is confidential to a third party, the Director will not be obliged to disclose that information to the Company, or to use or apply the information in relation to the Company's affairs, where to do so would amount to a breach of that confidence

(e) A Director shall not, by reason of his office or of the fiduciary relationship thereby established, be liable to account to the Company or the members for any remuneration, profit or other benefit realised by reason of his having any type of interest in a Conflict authorised under this Bye-law or in any Permitted Situation and no contract shall be liable to be avoided on the grounds of a Director having any such interest

86 (a) Subject where applicable to disclosure in accordance with the Bye-laws and subject to any terms imposed by the Directors in relation to any Conflict or Permitted Situation, a Director shall be entitled to vote in respect of any matter in which he is interested directly or indirectly and if he shall do so his vote shall be counted and, whether or not he does, his presence at the meeting shall be taken into account in ascertaining whether a quorum is present

(b) Subject to paragraph (c), if a question arises at a meeting of Directors or of a committee of Directors as to the right of a Director to participate in the meeting (or part of the meeting) for voting or quorum purposes, the question may, before the conclusion of the meeting, be referred to the chairman whose ruling in relation to any Director other than the chairman is to be final and conclusive

(c)    If any question as to the right to participate in the meeting (or part of the meeting) should arise in respect of the chairman, the question is to be decided by a decision of the Directors at that meeting, for which purpose the chairman is not to be counted as participating in the meeting (or that part of the meeting) for voting or quorum purposes

87    The Court may on behalf of the Company pay a gratuity or pension or allowance on or at any time after the death or retirement of any Director or other person who has held any salaried office or place of profit with the Company to any such former Director or to any such other person or to their widows or dependants and may make contributions to any fund and pay premiums for the purchase or provision of any such gratuity, pension or allowance

88    The Court may exercise the voting power conferred by the shares in any other company held or owned by the Company or exercisable by them as directors of such other company, in such manner in all respects as they think fit (including the exercise thereof in favour of any resolution appointing themselves or any of them directors, managing directors, managers or other officers of such company, or voting or providing for the payment of remuneration to the directors, managing directors, managers or other officers of such company

89    (a)    Any Director may by writing under his hand appoint any person approved by the Court, whether a member of the Company or not, to be an alternate director of the Company in his place and every such alternate director shall be entitled to attend and vote at meetings of the Court in the place of the Director appointing him and shall have and exercise all the powers, rights, duties and authorities of the Director appointing him but shall not be required to hold or acquire a share qualification, provided always that no such appointment shall be operative unless or until the approval of the Court shall have been given and entered in the Minute Book  A Director may at any time revoke the appointment of an alternate appointed by him and, subject to such approval as aforesaid, appoint another person in his place, and if a Director shall die or cease to hold the office of Director the appointment of his alternate shall thereupon cease and determine, provided nevertheless that if a Director retires by rotation and is re-elected by the meeting at which such retirement took effect any appointment made by him pursuant to this Article which was in force immediately prior to his retirement shall continue to operate after his re-election as if he had not so retired

(b)    Every person active as an alternate for a Director shall be an officer of the Company and shall alone be responsible to the Company for his own acts and defaults, and he shall not be deemed to be the agent of such or for the Director appointing him  The remuneration of any such alternate shall be payable out of the

remuneration payable to the Director appointing him, and shall consist of such portion of the last mentioned remuneration as shall be agreed between the alternate and the Director appointing him

## XX – POWERS OF DIRECTORS

90    The business and affairs of the Company shall be managed by the Court, who may exercise all such powers of the Company as are not by the Charters or by these presents required to be exercised by the Company in General Meeting, subject nevertheless to any regulations of these presents, to the provisions of the Charters, and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the Company in General Meeting but no regulation made by the Company in General Meeting shall invalidate any prior act of the Court which would have been valid if such regulation had not been made The general powers given by this Bye-law shall not be limited or restricted by any special authority or power given to the Court by any other Bye-law

91    Without prejudice to the generality of the powers conferred by the preceding Bye-law, the Court may appoint one or more General Managers or Assistant General Managers upon such terms as to remuneration and otherwise as the Court shall think fit and may delegate to any such General Manager or Assistant General Manager such of the powers of the Court (including power to sub-delegate) as they shall think fit

92    The Court may establish any local boards for managing any of the affairs of the Company, and may appoint any persons to be members of such local boards, or to be local directors or inspectors or general or local managers or agents, and may fix their remuneration, and may delegate to any local board, local director or inspector, or general or local manager or agent any of the powers, authorities and discretions vested in the Court, with power to sub-delegate, and may authorise the members of any local board, or any of them, to fill any vacancies therein, and to act notwithstanding vacancies, and any such appointment or delegation may be made upon such terms and subject to such conditions as the Court may think fit, and the Court may remove any person so appointed, and may annul or vary any such delegation, but no person dealing in good faith and without notice of any such annulment or variation shall be affected thereby

93    The Court may from time to time and at any time by power of attorney executed under the Seal, or in such other manner as the Court may authorise, appoint any company, firm or person or any fluctuating body of persons, whether nominated directly or indirectly by the Court, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Court under these presents) and for such period and subject to such conditions as they may think fit

94    Any such power of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Court may think fit and may also authorise any such attorney to sub-delegate all or any of the powers, authorities and discretions vested in him

## XXI – ROTATION OF DIRECTORS

95    The Company at a meeting at which a Director retires shall fill up the vacated office by electing a person thereto, and in default the retiring Director shall be deemed to have been re-elected, unless the Court in the notice convening the meeting, with a view to reducing the number of Directors within the limits fixed by Bye-law 80 hereof, shall have recommended that such vacated office be not filled up

96    No person other than a retiring Director shall, unless recommended by the Court for election, be eligible for the office of a Director at any General Meeting unless not less than seven clear days before the day appointed for the meeting there shall have been given to the Secretary notice in writing by some member duly qualified to be present and vote at the meeting for which such notice is given of his intention to propose such person for election, and also notice in writing signed by the person to be proposed of his willingness to be elected

97    The Court shall have power at any time and from time to time, to appoint any person to be a Director, either to fill a casual vacancy or as an addition to the existing Court, but so that the total number of Directors shall not at any time exceed the maximum number fixed by these presents   Any Director so appointed shall hold office only until the next following Annual General Meeting, and shall then be eligible for re-election

98    The Company may by Special Resolution remove any Director before the expiration of his period of office, and may by an Ordinary resolution appoint another person in his stead   The person so appointed shall be subject to retirement at the same time as if he had become a Director on the day on which the Director in whose place he is appointed was last elected a Director

## XXII – PROCEEDINGS OF DIRECTORS

99    The Court may meet together for the dispatch of business, adjourn and otherwise regulate their meeting as they think fit   Questions arising at any meetings shall be determined by a majority of votes  In case of any equality of votes the chairman shall have a second or casting vote   A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Court

100   A meeting of the Directors may consist of a conference between Directors some or all of whom are in different places provided that each Director who participates is able

(a)   to hear each of the other participating Directors addressing the meeting, and

(b)   if he wishes, to address all of the other participating Directors simultaneously,

whether directly, by conference telephone or by any other form of communications equipment (whether in use when this Bye-law was adopted or not) or by a combination of those methods

A meeting held in this way is deemed to take place at the place from where the chairman of the meeting participates

101   The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed at any other number shall be two

102   The continuing Directors may act notwithstanding any vacancies in the Court, but if and so long as the number of Directors is reduced below the minimum number fixed by or in accordance with these presents, the continuing Directors may act for the purpose of filling up vacancies in the Court or of summoning general meetings of the Company, but not for any other purpose

103   The Directors may elect a chairman and deputy chairman of their meetings and determine the periods for which they are to hold office, but if no such chairman or deputy chairman be elected, or if at any meeting neither be present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting

104   A meeting of the Court, at which a quorum is present, shall be competent to exercise all powers and discretions for the time being exercisable by the Court

105   A resolution in writing signed by a majority the Directors who are at the relevant time entitled to receive notice of a meeting of the Court and who would be entitled to vote on the resolution at a meeting of the Court (if that number is sufficient to constitute a quorum) or by a majority of the members of a committee duly established under Bye-law 106 at the relevant time shall be as valid and effectual as a resolution passed at a meeting of the Court or, as the case may be, of the committee properly called and constituted, provided that all of the Directors who are at the relevant time entitled to receive notice of a meeting of the Court and who would be entitled to vote on the resolution at a meeting of the Court, or all of the members of a committee duly established under Bye-law 106,

have received prior notice of the resolution in writing  The resolution may be contained in one document or in several documents in like form each signed by one or more of the Directors or members of the committee concerned

106   The Court may delegate any of its powers, authorities and discretions (with power to sub-delegate) to any committee consisting of such person or persons (whether a member or members of its body or not) as it thinks fit   Any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on them by the Court    References in these presents to committees include sub-committees permitted under this Bye-law

107   The meetings and proceedings of any such committee consisting of two or more members shall be governed by the provisions of these presents regulating the meetings and proceedings of the Court so far as the same are applicable and are not superseded by any regulations made by the Court under the last preceding Bye-law

108   All acts done by any meeting of the Court, or of a committee of the Court, or by any person acting as a Director, shall, notwithstanding it be afterwards discovered that there was some defect in the appointment of any such Director, or person acting as aforesaid, or that they or any of them were disqualified, or had vacated office, be as valid as if every such person had been duly appointed, and was qualified and had continued to be a Director

## XXIII – SECRETARY

109   The Secretary shall be appointed by the Court for such term, at such remuneration and upon such conditions as they may think fit, and any Secretary may be removed by the Court

110   Anything required or authorised to be done by or to the Secretary may, if the office is vacant or if there is for any reason no secretary capable of acting, be done by or to any assistant or deputy secretary, or if there is no assistant or deputy secretary capable of acting, by or to any officer of the Company authorised generally or specially in that behalf by the Court

## XXIV – THE SEAL

111   The Court shall provide a Common Seal for the Company with such device thereon as the Court may determine, but with the Corporate name of the Company engraved thereon, and the Seal may at any time be destroyed and a new Seal substituted therefor

112   The Seal shall be under the charge of the Court, who shall provide for the safe custody thereof

113   The Seal shall be used and affixed in accordance with regulations made by the Court

114   The Company may exercise the powers conferred by the Charters with regard to having one or more official seals for use abroad, and such power shall be vested in the Court

## XXV – MINUTES

115   The Court shall cause minutes to be made in books provided for the purpose

    (a)   Of all appointments of officers made by the Court,

    (b)   Of the names of the Directors present at each meeting of the Court and of any committee of Directors, and

    (c)   Of all resolutions and proceedings at all meetings of the Company and separate meetings of classes of members and of the Court and of committees of the Court

116   Any such minute if purporting to be signed by the chairman of the meeting at which the proceedings were had or by the chairman of the next succeeding meeting of the Company or the Court or the committee of the Court (as the case may be) shall be sufficient evidence of the proceedings thereat and until the contrary is proved every meeting of the Company or of the Court or of a committee of Directors in respect of the proceedings whereat minutes have been so made shall be deemed to have been duly convened and held and all resolutions and proceedings stated in the said minutes to have been passed and had thereat shall be deemed to have been duly passed and had

## XXVI – DIVIDENDS AND RESERVES

117   The profits of the Company available for dividend and resolved to be distributed shall be applied in the payment of dividends to the members in accordance with their respective rights and priorities   The Company in general meeting may declare dividends accordingly

118   No dividend shall be payable except out of the profits of the Company, or in excess of the amount recommended by the Court

119   Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, dividends shall be declared and paid according to the amounts paid on the shares in respect whereof the dividend is paid, but no amount paid on a share in advance of calls shall be treated for the purposes of this Bye-law as paid on the share   All dividends shall be apportioned and paid pro rata according to the amounts paid on the shares during any portion or portions of the period in respect of which the dividend is paid   But if any share is issued on terms providing that it shall

rank for dividend as if paid up (in whole or in part) as from a particular date, such share shall rank for dividend accordingly

120  The Court may from time to time pay to the members such interim dividends as appear to the Court to be justified by the profits of the Company

121  The Court may from time to time set aside out of the profits of the Company (including therein premiums obtained on the issue of shares) and carry to reserve or reserves such sums as they think proper, which shall, at the discretion of the Court, be applicable for any purpose to which the profits of the Company may properly be applied, and pending such application may at the like discretion, either be employed in the business of the Company, or be invested in such investments (other than shares of the Company) as the Court may from time to time think fit and without its being necessary to keep investments of the reserve separate from other investments of the Company   The Court may also without placing the same to reserve carry forward any profits which they may think prudent not to divide

122  The Court may deduct from any dividend or other moneys payable to any member on or in respect of a share all sums of money (if any) presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company

123  No dividend shall bear interest as against the Company

Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more such ways, and the Court shall give effect to such resolution and where any difficulty arises in regard to such distribution, the Court may settle the same as they think expedient, and in particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties and may vest any such specific assets in trustees as may seem expedient to the Court

124  Any dividend on or moneys payable in respect of a share may be paid by cheque or warrant sent through the post to such person and to such address as the holder or all the joint holders shall in writing direct or, in default of any such directions, to the registered address of the member or person entitled thereto, and in case of joint holders to any one of such joint holders   Every such cheque or warrant shall be made payable to the order of the person to whom it is sent and payment of the cheque or warrant, if purporting to be duly endorsed shall be a good discharge to the Company

125    If several persons are registered as joint holders of any share, any one of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share

## XXVII – CAPITALISATION OF PROFITS

126    The Company may by Ordinary Resolution, upon the recommendation of the Court, resolve that it is desirable to capitalise any undivided profits of the Company (including profits carried and standing to any reserve or reserves or other special account), and accordingly that the Court be authorised and directed to appropriate the profits resolved to be capitalised to the members in proportion to the amounts paid up on the shares held by them respectively, and to apply such profits on their behalf, either in or towards paying up the amounts, if any, for the time being unpaid on the shares held by such members respectively, or in paying up in full unissued shares of the Company of a nominal amount equal to such profits, such shares to be allotted and distributed, credited as fully paid up, to and amongst such members in the proportion aforesaid, or partly in one way and partly in the other

127    Whenever such a resolution as aforesaid shall have been passed the Court shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares, if any, and generally shall do all acts and things required to give effect thereto, with full power to the Court to make such provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares becoming distributable in fractions

## XXVIII – ACCOUNTS

128    The Court shall cause to be kept such books or accounts as are necessary to exhibit and explain the transactions and financial position of the Company and to give a true and fair view of the state of its affairs, and in particular (but without limiting the generality of the foregoing provision) proper books of account with respect to

    (a)    All sums of money received and expended by the Company and the matters in respect of which such receipt and expenditure takes place,

    (b)    All sales and purchases by the Company, and

    (c)    The assets and liabilities of the Company

129    The books of account shall be kept at the Office or (subject to the provisions of section 388 of the Act), at such other place as the Court think fit, and shall at all times be open to inspection by the Court  No member (other than a Director or Auditor) shall have any right of inspecting any account or book or document of the Company, except as

conferred by the statutes or authorised by the Court or by the Company in general meeting

130 The Court shall from time to time in accordance with the provisions of the Act so far as the same shall be applicable to the Company cause to be prepared and to be laid before the Company in General Meeting such profit and loss accounts, balance sheets signed on behalf of the Court by three Directors, group accounts (if any) and reports as are specified by the Act so far as applicable

131 A printed copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the Company in general meeting and of the Directors' and Auditors' reports shall, at least twenty-one days previously to the meeting be delivered or sent by post to every member and debenture holder of the Company of whose address the Company is aware (or in the case of joint holders of any share or debenture to one or the joint holders), and to the Company's Auditors

## XXIX – AUDIT

132 The Company shall at every Annual General Meeting appoint one or more Auditors to hold office from the close of that until the close of the next ensuing Annual General Meeting

133 Neither an officer nor servant of the Company, nor a partner or person in the employment of an officer or servant of the Company shall be capable of being appointed Auditor of the Company

134 At any Annual General Meeting, a retiring Auditor, however appointed shall be re-appointed without any resolution being passed unless

    (a)    He is not qualified for re-appointment, or

    (b)    A resolution has been passed at that meeting either incompliance with Bye-law 137 appointing some-body instead of him or providing expressly that he shall not be re-appointed, or

    (c)    He has given the Company notice in writing of his unwillingness to be re-appointed

Provided that where notice is given of an intended resolution to appoint some person or persons in place of a retiring Auditor, and by reason of the death, incapacity or disqualification of that person or of all those persons, as the case may be, the resolution cannot be proceeded with, the retiring Auditor shall not be automatically re-appointed by virtue of this Bye-law

135     The Directors may fill any casual vacancy in the office of Auditor, but while any such vacancy continues the surviving or continuing Auditor or Auditors (if any) may act

136     The remuneration of the Auditors shall be fixed by the Company in general meeting or in such manner as the Company in General Meeting may determine, except that the remuneration of any Auditors appointed to fill a casual vacancy, may be fixed by the Directors

137     A person, other than a retiring Auditor, shall not be capable of being appointed Auditor at an Annual General Meeting, unless notice of an intention to nominate that person to the office of Auditor has been given by a member to the Company not less than twenty-eight days before the meeting, and the Company shall send a copy of any such notice to the retiring Auditor, and shall give notice thereof to the members at the same time and in the same manner as it gives notice of the meeting, or if that is not practicable shall give notice thereof either by advertisement in accordance with Bye-law 148 or in any other mode authorised by these presents not less than twenty-one days before the meeting, provided that if, after notice of the intention to nominate an Auditor has been so given, an Annual General Meeting is called for a date twenty-eight days or less after the notice has been given, the notice, though not given within the time required by this Bye-law shall be deemed to have been properly given for the purposes thereof, and the notice to be given by the Company, may instead of being given within the time required by this Bye-law, be given at the same time as the notice of the meeting

138     The Auditors' report to the members made pursuant to the applicable provisions as to audit contained in the Act shall be sent to members in accordance with sections 423 and 495 of the Act

139     Subject as in the Act provided and without prejudice to the provisions of the foregoing Bye-laws, the Auditors shall be appointed and their duties regulated in accordance with Part 16 of the Act insofar as it applies to the Company

## XXX – WINDING UP

140     In case the Company shall upon the recommendation of the Court resolve by Special Resolution that the business of the Company be discontinued and its affairs wound up, or in case of the general revocation pursuant to the provisions of the Charters of the powers and privileges thereby conferred upon the Company the affairs of the Company shall be wound up as provided by the Charters with all convenient dispatch and as and when the affairs of the Company shall have been fully wound up the Company shall be dissolved

141     The Court shall have full power in any such case to carry the winding up of the affairs of the Company into effect by all necessary ways and means and all powers and authorities vested in or exercisable by the

Court under these presents or otherwise shall (subject to the provisions of the Charters) remain vested in and exercisable by the Court and remain in full force so far as may be necessary for the purpose of winding up the affairs of the Company

142 For the purposes of any such winding up the Court may from time to time in their discretion call up and enforce payment by the members of all moneys (if any) which they may respectively be liable to pay towards the discharge of the Company's liabilities and may execute and do all such deeds and things as shall be necessary or convenient for getting in and disposing of the property of the Company and discharging its debts and liabilities, so far as the assets of the Company will extend, and for distributing the surplus assets if any amongst the members in accordance with their respective rights and priorities and finally winding up and closing the affairs of the Company and putting an end thereto as the Court shall think requisite or Counsel shall advise

143 If the affairs of the Company shall be wound up as aforesaid the Court may with the sanction of a Special Resolution divide amongst the members in specie the whole or any part of the assets of the Company available for distribution amongst them and may with the like sanction vest the whole or any part of such assets in trustees upon such trusts for the benefit of the members as the Court with the like sanction shall think fit

## XXXI – INDEMNITY

144 To the extent permitted by law, the Company may indemnify any Director or former Director of the Company against any liability and may purchase and maintain for any Director or former Director of the Company insurance against any liability   No Director or former Director of the Company shall be accountable to the Company or the members for any benefit provided pursuant to this Bye-law and the receipt of any such benefit shall not disqualify any person from being or becoming a Director of the Company

## XXXII – ALTERATIONS OF BYE-LAWS AND RULES

145 These presents may be altered or added to in such manner as shall for the time being be authorised or prescribed by the Charters, or (in absence of any provision in the Charters as to how such alterations or additions may or shall be made) by Special Resolution   Any alteration or addition so made shall be as valid and effective and be binding upon the members for the time being in the same manner as if such alteration or addition had originally been contained in these presents and shall itself be subject in like manner to alteration

## XXXIII – NOTICES

146    Any notice or document may be served by the Company on any member
        either personally or by sending it through the post in a prepaid letter
        addressed to such member at his registered address as appearing in the
        register of members   In the case of joint holders of a share all notices
        shall be given to that one of the joint holders whose name stands first in
        the register of members, and notice so given shall be sufficient notice to
        all the joint holders

147    Any member described in the register of members by an address not
        within the United Kingdom who shall from time to time give to the
        Company an address within the United Kingdom at which notices may be
        served upon him shall be entitled to have notices served upon him at
        such address, but save as aforesaid no member other than a registered
        member described in the register of members by an address within the
        United Kingdom shall be entitled to receive any notice from the
        Company

148    Any notice of General Meeting of the Company which is given by
        advertisement shall be advertised once in the London Gazette and in two
        leading London Daily morning newspapers to be selected by the Court,
        and any notice so given shall be deemed to be served on all the
        members on the day on which such advertisement or the last of such
        advertisements appear

149    Any notice or other document, if served by post, shall be deemed to have
        been served at the expiration of twenty-four hours after the letter
        containing the same is posted, and in proving such service it shall be
        sufficient to prove that the letter containing the notice or document was
        properly addressed, stamped and posted

150    Any notice or document delivered or sent by post to or left at the
        registered address of any member in pursuance of these presents shall,
        notwithstanding that such member be then dead or bankrupt, and
        whether or not the Company have notice of his death or bankruptcy, be
        deemed to have been duly served in respect of any share registered in
        the name of such member as sole or joint holder, unless his name shall
        at the time of the service of the notice or document have been removed
        from the register of members as the holder of the share, and such
        service shall for all purposes be deemed a sufficient service of such
        notice or document on all persons interested (whether jointly with or as
        claiming through or under him) in the share