UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20492-ALTMAN

IN RE:

**MARTINEZ AND MSR MEDIA SKN LTD.,**

_____/

**ORDER**

This is a collateral matter to two defamation proceedings currently underway in St. Kitts and Nevis. On February 7, 2024, Philippe Martinez and MSR Media SKN Ltd. (the "Applicants") filed an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings [ECF No. 1] and a Memorandum of Law in Support [ECF No. 1-1] (the "Application"),[1] which we granted in a February 8, 2024, Order [ECF No. 7]. A few weeks later, one of the plaintiffs from one of the St. Kitts and Nevis proceedings—former Prime Minister Dr. Timothy Harris—filed a Motion to Quash Applicants' Subpoena (the "Motion to Quash") [ECF No. 10]. Shortly after that, the plaintiffs from the other St. Kitts and Nevis action—Caribbean Galaxy Real Estate Corporation and its former CEO, Ying Jin—asked to join in Harris's Motion to Quash (the "Joinder to the Motion to Quash") [ECF No. 14]. Because the Applicants failed to comply with Federal Rule of Civil Procedure 45(a)(4)'s prior-notice requirement,[2] we **GRANT** the Motion to Quash. And, because we have concerns about the scope of discovery we permitted when we granted the § 1782 Application, we also *sua sponte* **VACATE** our February 8, 2024, Order. The Applicants may, however, file a renewed § 1782 application.

---

[1] Unless we indicate otherwise, when we cite to the Application, we're referring to the Memorandum of Law in Support.
[2] As we'll see, only Caribbean Galaxy and Ying Jin have asserted this Rule 45(a)(4) argument.

**FACTUAL AND PROCEDURAL BACKGROUND**

Martinez and his film company, MSR Media, are defendants in "two civil proceedings arising from claims of defamation filed against [them] in the High Court of Justice in St. Kitts and Nevis on December 8, 2023, and December 29, 2023." Declaration of [Applicants' Counsel] Damian Kelsick ("Kelsick Decl.") [ECF No. 1-5] ¶ 2. Martinez is a "United States resident and successful film producer with a primary place of business in Florida." *Id.* ¶ 6. Martinez "founded . . . MSR Media . . . to bring the film industry to St. Kitts and Nevis." *Id.* ¶ 7. At some point during this endeavor, he "learned that an organized group of individuals and entities, including Caribbean Galaxy Real Estate Corp., Ying Jin, and Timothy Harris engaged in a scheme to defraud the St. Kitts and Nevis Citizenship by Investment ('CBI') program, in effect defrauding the people of St. Kitts and Nevis as well as causing economic harm to investors in the county, including [the Applicants], who invested funds in St. Kitts and Nevis on the basis of the allocation to them of units for sale under the CBI program as a way to recoup their investments." *Id.* ¶ 8 (cleaned up).[3] Having discovered this (alleged) fraud, Martinez "authored a letter dated November 17, 2023, . . . describing the scheme. On December 8, 2023, Caribbean Galaxy and Ying Jin, its former CEO, filed suit against [the Applicants] for defamation . . . regarding the Letter." *Id.* ¶ 18. "On December 29, 2023, former Prime Minister Timothy Harris, who is also a current member of the National Assembly . . . , filed a similar defamation suit . . . for statements contained in the same Letter." *Id.* ¶ 19.

On February 7, 2024, the Applicants petitioned us *ex parte* under 28 U.S.C. § 1782 for an order compelling a subpoena on Bank of America. *See generally* Application. "As part of their defense, the Applicants [sought] documentary evidence of CBI-related transactions into and out of U.S. bank accounts as well as transactions that passed through U.S. banks, including Bank of America, N.A., . .

---

[3] Kelsick has provided additional details about this allegedly fraudulent scheme. *See* Kelsick Decl. ¶¶ 9–17.

. to demonstrate the truth of the allegations made in [their] Letter." *Id.* at 11. According to Kelsick (again, the Applicants' lawyer), "[a]bsent assistance obtained through the . . . 28 U.S.C. § 1782 application, Applicants have no practicable method to obtain highly relevant evidence in the possession, custody, or control of Respondent Bank." Kelsick Decl. ¶ 24. Kelsick "believe[s] that the High Court of Justice in St. Kitts and Nevis would be receptive towards any discovery ordered from Respondent Bank to these proceedings, and the court would permit Applicants to rely on them in evidence at trial." *Id.* ¶ 27. The Applicants established that Bank of America is a corporation that "undertakes systematic and continuous local activities" in our jurisdiction—and that it thus falls within the ambit of § 1782. *See* Application at 13. According to the Applicants, "records of transactions . . . flowed at least through one branch located in this district." *Id.* at 14. So, on February 8, 2024, we entered an order granting the § 1782 Application and authorizing the Applicants to serve the subpoena on Bank of America and "any other person, corporate entity, or financial institution found or residing in this District as may be necessary to obtain testimonial or documentary evidence described in the Application." Order Granting *Ex Parte* Application at 6.

Three weeks later, Harris filed his Motion to Quash, arguing that the Applicants "fail[ed] to make the necessary showing under the applicable statute" and that they "are not entitled to the production they seek." Motion to Quash at 1, 3. Harris says that "[§] 1782 only permits discovery of evidence 'for use' in a proceeding in a foreign jurisdiction," but he insists that any evidence generated via the Applicants' subpoena will be unusable in the St. Kitts and Nevis trial because "the law of St. Kitts and Nevis does not allow 'fishing expeditions,' which is exactly what Applicants are engaged in here." *Id.* at 2. Harris adds that "the law of St. Kitts and Nevis would not have allowed Applicants to request information of Movant or any third party to support the defamatory allegations made in relation to Movant at the time of publication" and "would not permit Applicants to use any information obtained through Movant's bank records because they have already asserted their

3

justification defense." *Id.* at 2, 4. And, even if the Applicants had satisfied the statutory requirements, Harris urges us to deny their request *anyway* based on the discretionary factors the Supreme Court outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). *See* Motion to Quash at 8–9.

On March 4, 2024, Caribbean Galaxy and Ying Jin submitted their Joinder to the Motion to Quash,[4] by which "Caribbean Galaxy join[ed] in and adopt[ed] Dr. Harris' Motion to Quash, including the arguments, objections, and relief requested therein, because that motion appli[ed] equally to Caribbean Galaxy." Joinder to Motion to Quash at 1. According to Caribbean Galaxy, "as demonstrated in the Motion to Quash, the law of St. Kitts and Nevis does not allow . . . fishing expeditions." *Ibid.* Caribbean Galaxy also maintains that, "if the subpoena is not quashed for [the reasons Harris raised], it should be quashed on the alternative ground that Applicants did not comply with [FED. R. CIV. P.] 45(a)(4)," because, "to the best of Caribbean Galaxy's knowledge, information, and belief, Applicants failed to serve a notice and a copy of the subpoena on Caribbean Galaxy before serving the subpoena on Bank of America[.]" *Id.* at 2. Finally, Caribbean Galaxy maintains, "[q]uashing the subpoena on this basis is strongly warranted here because Applicants also obtained the § 1782 Order itself on an *ex parte* basis." *Ibid.*

The Applicants then filed their Memorandum of Law in Support of Applicants' Opposition to Motion to Quash Applicants' Subpoena (the "Opposition to Motion to Quash") [ECF No. 16-1], contending that "[Harris] and Caribbean Galaxy filed the instant Motion to Quash and Joinder in a closed, *ex parte* matter to which they are not parties" and that "neither have sought to intervene under Rule 24 of the Federal Rules of Civil Procedure or otherwise. Accordingly, the Motion to Quash and Joinder are both procedurally improper and should be denied." Opp. to Motion to Quash at 5. The

---

[4] Since Caribbean Galaxy and Ying Jin have always acted in tandem in these proceedings, we'll refer to them collectively as "Caribbean Galaxy."

4

Applicants also argue that they met the "for use" element of § 1782 because, "as [Harris] notes in his filing, Applicants have already plead their defense of justification, including pleading acts of corruption, signifying that they are seeking specific information in support of that defense rather than 'fishing' for any possible information." *Id.* at 6. The Applicants re-iterate that "[they] are not trying here to *find* their defense to the Foreign Defamation Proceedings but are rather seeking 'additional documents' to support the defense that they have already pleaded to the High Court of Justice in St. Kitts and Nevis." *Id.* at 7. The Applicants add that "[Harris's] argument also implicitly requires this Court to adjudicate whether the evidence would be discoverable and admissible under the laws of a foreign court. But it is not the role of this Court to rule on the technical aspects of discovery and admissibility in the courts of St. Kitts and Nevis . . . which can choose whether or not to admit the evidence obtained." *Id.* at 9. Finally, the Applicants claim that they "were not required by Rule 45 to serve Caribbean Galaxy—or any other non-parties—prior to serving the Subpoena on Bank of America, N.A." *Id.* at 14.

In his Reply in Support of his Motion to Quash Applicant's Subpoena (the "Motion to Quash Reply") [ECF No. 17], Harris insists that his initial Motion to Quash was "procedurally proper" because he met "all the requirements to intervene as of right." Motion to Quash Reply at 2. In the event we disagree with this view, however, he asks us to construe "*nunc pro tunc*" his Motion to Quash as "both a Motion to Quash *and* a Motion to Intervene." *Ibid.* He then proceeds to expand on his § 1782 and *Intel*-factor arguments. *See id.* at 3–9. Again, Caribbean Galaxy joined him in these arguments (the "Joinder to the Motion to Quash Reply") [ECF No. 18]. On the issue of intervention, Caribbean Galaxy contends that it and Harris "have standing to challenge [the] § 1782 Order and resulting subpoena because they are named parties to the foreign proceedings and the discovery sought is directed at their bank records." Joinder to the Motion to Quash Reply at 2. Caribbean Galaxy briefly adopts Harris's § 1782 and *Intel*-factor arguments, *see id.* at 4, before advancing a more comprehensive

5

and detailed attack on the Applicants' alleged failure to comply with Rule 45(a)(4), *see id.* at 4–7.[5] This Order follows.[6]

## THE LAW

A district court has the authority to grant an application for judicial assistance under 28 U.S.C.

---

[5] More subpoenas and two additional motions to quash followed. On April 29, 2024, Caribbean Galaxy filed a Motion to Quash Applicants' Subpoena to JP Morgan Chase Bank [ECF No. 20]. According to Caribbean Galaxy, the Applicants used our Order granting the *Ex Parte* § 1782 Application to subpoena JP Morgan Chase Bank. *See id.* at 2. In attacking the JP Morgan subpoena, Caribbean Galaxy essentially adopts all the arguments it made in challenging the Bank of America subpoena. *See ibid.* ("The subpoena to Chase should be quashed for the same reasons and on the same grounds previously demonstrated by Dr. Harris and Caribbean Galaxy in seeking to quash [the Bank of America subpoena]."). Then, on May 8, 2024, Caribbean Galaxy filed a Motion to Quash Applicants' Additional Subpoenas (to Wells Fargo Bank, N.A., The Bank of New York Mellon Corporation, The Bank of New York Mellon, BNY Mellon N.A., and Standard Chartered International USA). *See* [ECF No. 26]. Again, Caribbean Galaxy advanced the same arguments it raises here. *See id.* at 1 ("Unfortunately, like they did with their other subpoenas to Bank of America, N.A. and JPMorgan Chase Bank, N.A., Applicants deliberately chose to issue these additional subpoenas in secret without any notice to Caribbean Galaxy as FED. R. CIV. P. 45(a)(4) and 28 U.S.C. § 1782(a), and fundamental due process, require."). Because we're *sua sponte* vacating our Order Granting the Application (from which all these additional subpoenas spawned), we'll also quash these other subpoenas.

[6] To be clear, we're quashing the subpoenas and vacating our February 8, 2024, Order *only* because (1) the Applicants failed to comply with Rule 45(a)(4), and (2) we have concerns about the scope of the discovery we permitted. But we *aren't* persuaded by Harris and Caribbean Galaxy's § 1782 argument—*viz.*, that "the information sought cannot be 'for use' in the defamation proceeding because the law of St. Kitts and Nevis would not have allowed Applicants to request information of Movant or any third party to support the defamatory allegations made in relation to Movant at the time of publication." Motion to Quash at 2. Far from being engaged in a "fishing expedition," *ibid.*, the Applicants are the *defendants* in the St. Kitts and Nevis proceedings. And, even if John Carrington (Harris and Caribbean Galaxy's expert) turns out to be right—and the St. Kitts and Nevis court doesn't admit the evidence the Applicants seek to discover here—his assertions are far from conclusive. *See generally* Carrington First and Second Declarations [ECF Nos. 10-1 & 17-1]. That's significant because, "[i]n the absence of '*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782,' a district court should err on the side of permitting discovery." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added)). It's also been our general practice, when there's some genuine debate about the ultimate admissibility of § 1782 evidence, to allow the discovery to proceed. *See In Re Bernal*, 2018 WL 6620085, at *5 (S.D. Fla. Dec. 18, 2018) (Torres, Mag. J.) (noting—in an analogous § 1782 dispute—that "the Spanish Court, rather than this Court, should decide whether additional evidence is admissible, and it will be in a better position to do so if [the § 1782 applicant] is permitted to conduct the requested discovery first"). In short, while Harris and Caribbean Galaxy are free to challenge any future § 1782 Application the Applicants may file, we're putting them on notice now that we aren't persuaded by the "for use" contentions they've advanced thus far.

§ 1782 if the following statutory requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (quoting 28 U.S.C. § 1782(a)). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *Id.* at 1332 (quoting *Intel*, 542 U.S. at 255). In determining whether to provide assistance, a district court should consider the discretionary *Intel* factors, which the Eleventh Circuit has repackaged as follows:

> (1) whether aid is sought to obtain discovery from a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the applicant is attempting to use 28 U.S.C. § 1782 to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the discovery requests are unduly intrusive or burdensome.

*Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1196 (11th Cir. 2016) (cleaned up).

If, after finding that the statutory requirements have been met (and that the *Intel* factors favor the applicant), a district court may grant the § 1782 application. "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). And, under FED. R. CIV. P. 45(a)(4), "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." FED. R. CIV. P. 45(a)(4).

Rule 45 also permits a court to modify or quash a subpoena where, among other things, it "subjects a person to undue burden" or implicates the "disclosure of privileged or protected matter,

7

if no exception or waiver applies[.]" FED. R. CIV. P. 45(d)(3)(A). "Moreover, a motion to quash a subpoena issued under § 1782 is left to the discretion of the court, which is undisturbed unless the court makes a clear error of judgment or applies the wrong legal standard." *In re England/Bahamas*, 2021 WL 3270074, at *2 (S.D. Fla. July 30, 2021) (Valle, Mag. J.); *see also Victoria LLC v. Likhtenfeld*, 791 F. App'x 810, 815 (11th Cir. 2019) ("We also review the district court's denial of the motion to quash [the § 1782 subpoena] only for abuse of discretion.").

## ANALYSIS

### I. Harris and Caribbean Galaxy have properly intervened

As a preliminary matter, we find that Harris and Caribbean Galaxy have properly intervened in this case. Again, the Applicants filed their § 1782 Application *ex parte*—and there's nothing wrong with that. *See Matter of Colombo Agroindústria S.A.*, 2022 WL 2167719, at *1 (S.D. Fla. June 16, 2022) (Altonaga, C. J.) ("It is both common and proper for section 1782 applicants to apply for discovery assistance on an *ex parte* basis."); *see also In re Clerici*, 481 F.3d at 1337 (affirming the denial of a motion to vacate an *ex parte* § 1782 application). We granted the Application on February 8, 2024; Harris first appeared with his Motion to Quash on February 29, 2024; and Caribbean Galaxy submitted its Joinder to the Motion to Quash on March 4, 2024. Although neither Harris nor Caribbean Galaxy moved to intervene in the matter, both challenged the Bank of America subpoena. *See generally* Motion to Quash; Joinder to Motion to Quash. The Applicants are right that this was "procedurally improper," Opp. to Motion to Quash at 5, because Rule 24(a) states that, "[*o*]*n timely motion*, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a) (emphasis added). And the Applicants are correct that it's common practice for litigants in foreign proceedings

8

against whom some piece of § 1782 evidence will be used (like Harris and Caribbean Galaxy) to file motions to intervene *before* challenging the propriety of the subpoenas. *See In re da Costa Pinto*, 2018 WL 6620905, at *5–6 (S.D. Fla. Aug. 27, 2018) (Goodman, Mag. J.), *report & recommendation adopted*, 2018 WL 6620132 (S.D. Fla. Oct. 23, 2018) (Cooke, J.) (noting that, in the context of § 1782 proceedings, "targets of foreign proceedings routinely intervene" and "[c]ourts have consistently allowed intervention for purposes of protecting private issues from disclosure"); *see also In re Terra Invest, LLC*, 2022 WL 19406162, at *6 (S.D. Fla. June 9, 2022) (Otazo-Reyes, Mag. J.) (granting a motion to intervene filed by a challenger to a § 1782 subpoena); *In re Pons*, 2020 WL 5355967, at *1 (S.D. Fla. Sept. 7, 2020) (O'Sullivan, Mag. J.) (same). Still, after the Applicants noted this procedural deficiency, Harris recognized the problem and asked us to "*nunc pro tunc* . . . construe [his] Motion to Quash as both a Motion to Quash *and* a Motion to Intervene." Motion to Quash Reply at 2. And that's what we'll do.

As we've explained, Rule 24 provides for two kinds of intervention: intervention as of right and permissive intervention. *See* FED. R. CIV. P. 24. A party seeking to intervene as of right must meet the following four criteria:

1. The application must be timely;

2. the applicant must have an interest relating to the property or transaction which is the subject of the action;

3. the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and

4. the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit.

*Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (citing FED. R. CIV. P. 24(a)(2)). Harris and Caribbean Galaxy have met each of these four elements.

*First*, their motion (which, again, we're construing as a motion to intervene) was timely. "In determining whether a motion to intervene was timely, we consider (1) the length of time during which

the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (cleaned up). "[W]e must also keep in mind that timeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Ibid.* (cleaned up).

Here, roughly three weeks separated our Order Granting the § 1782 Application and the appearances by Harris and Caribbean Galaxy. But, of course, Harris and Caribbean Galaxy wouldn't have had three full weeks of notice before they appeared because the Applicants would have taken at least a few days—we don't know how many—to serve the subpoena on Bank of America, and then Bank of America would have taken some time (again, we don't know how much) to tell Harris and Caribbean Galaxy about the subpoena. In any event, our cases suggest that a three-week delay is timely in a § 1782 proceeding. *See, e.g.*, *In re Terra Invest*, 2022 WL 19406162, at *3–4 (finding intervention in a § 1782 proceeding timely despite a three-month delay between the intervenor's discovery of the application and its motion to intervene); *In re Costa Pinto*, 2022 WL 4088012, at *3 (S.D.N.Y. Sept. 6, 2022) ("Although the motion to intervene was filed five months after the Petitioner's § 1782 application was filed, the Court finds that the motion to intervene was timely.").

*Second*, Harris and Caribbean Galaxy have an interest in the discovery the Applicants are seeking. "Intervention as of right is only available if the interest asserted is 'direct, substantial, [and] legally protectable.'" *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (quoting *Athens Lumber*,

690 F.2d at 1366). In other words, "the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber*, 690 F.2d at 1366. We "must be flexible" when deciding whether a party has a protectable interest and must look to the particular facts and circumstances of the case. *Huff*, 743 F.3d at 796 (cleaned up). That Harris and Caribbean Galaxy are the plaintiffs in the underlying St. Kitts and Nevis actions for which the § 1782 discovery is being sought is enough for them to establish that they have a sufficient interest here. *See, e.g., In re Dep't of Antioquia*, 2016 WL 10707020, at *2 (S.D. Fla. June 9, 2016) (Otazo-Reyes, Mag. J.), *report & recommendation adopted*, 2016 WL 10707016 (S.D. Fla. Oct. 26, 2016) (Scola, J.) (finding that the movants "qualif[ied] for intervention as of right" in part because "the evidence sought by Applicants is to be used in an action against them"); *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, 2024 WL 555780, at *7 (S.D.N.Y. Jan. 18, 2024), *report & recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) (finding that the foreign-action defendant had shown a sufficient interest in the foreign-action plaintiff's § 1782 proceeding because the foreign-action plaintiff intended to use the evidence against the foreign-action defendant).

*Third*, Harris and Caribbean Galaxy would be prejudiced by our denial of their motion to intervene. For this factor, "[a]ll that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings." *Huff*, 743 F.3d at 800. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Ibid.* (quoting *Cascade Nat. Gas v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967)). Because Harris and Caribbean Galaxy are the plaintiffs in the St. Kitts and Nevis actions—and because some of the bank records in question belong to them (and, presumably, will be used against them)—they would be prejudiced if they weren't allowed to intervene in this § 1782 proceeding. *See In re Terra Invest*, 2022 WL 19406162, at *4 (finding that "an essential participant" in the foreign proceeding would be "practically disadvantaged" given the applicant's "discovery

11

goals").

*Fourth*, without their intervention, Harris and Caribbean Galaxy's interests wouldn't be adequately represented here. "There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners. This presumption is weak and can be overcome if the [intervenor] present[s] some evidence to the contrary." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (cleaned up). "The 'inadequate representation' requirement 'should be treated as minimal' and is satisfied 'unless it is clear that [the existing parties] will provide adequate representation.'" *Huff*, 743 F.3d at 800 (cleaned up). This factor is easy. Without Harris and Caribbean Galaxy's intervention, the only party to this § 1782 action would be the Applicants, who (it goes without saying) are not pursuing the "same objectives" as Harris and Caribbean Galaxy.

Having found that all four of Rule 24(a)'s requirements have been met, Harris and Caribbean Galaxy are entitled to intervene as of right.

But, even if they weren't, we would *still* have allowed them to intervene. We may permit non-parties to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1310 n.2 (11th Cir. 2005) (quoting FED. R. CIV. P. 24(b)(1)). A party seeking permissive intervention "must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *In re da Costa Pinto*, 2018 WL 6620905, at *5 (cleaned up). The decision to allow permissive intervention is—as the name suggests—discretionary and "may be reviewed only for a clear abuse of discretion." *Athens Lumber*, 690 F.2d at 1367. When exercising its discretion to allow permissive intervention, "a district court 'can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene].'" *In re da Costa Pinto*, 2018 WL 6620905, at *7 (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999)). Finally, "'[a]ny doubt concerning the propriety of allowing the intervention should be

12

resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.'" *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 n.9 (11th Cir. 1999) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

As we've indicated, Harris and Caribbean Galaxy's motion to intervene is "timely," and they have a "claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). Permissive intervention sets a lower bar than intervention under Rule 24(a). *See In re Terra Invest*, 2022 WL 19406162, at *5 (granting permissive intervention "[i]n the alternative to intervention of right"); *In re Rivada Networks*, 230 F. Supp. 3d 467, 472 (E.D. Va. 2017) ("And although there may be some basis to dispute whether Rule 24(a) applies, there is *no doubt* that rule 24(b) fits this case." (emphasis added & cleaned up)). Under Rule 24(a) and (b), in short, we grant Harris and Caribbean Galaxy's request to intervene.

## II. Rule 45(a)(4) applied to the Bank of America subpoena, and the Applicants failed to comply with its provisions

We move on, then, to consider whether the Applicants had to comply with Rule 45(a)(4) by notifying Harris and Caribbean Galaxy before serving Bank of America with the subpoena. As we'll discuss, we find that they did. In reaching this conclusion, we rely heavily on Judge T.S. Ellis, III's cogent analysis in *In re Rivada Networks*, 230 F. Supp. 3d 467 (E.D. Va. 2017)—the only case we've found on this issue.

In *Rivada*, a telecommunications company called Rivada Networks ("Rivada") sought—through § 1782—"permission to serve two subpoenas in the Eastern District of Virginia to obtain documents and deposition testimony for use in both a constitutional appeal and a potential civil lawsuit in Mexico.[7] That application was granted and two subpoenas issued, pursuant to which a deposition commenced, but was not completed. Importantly, however, the subpoenas were executed

---

[7] Only the subpoena to obtain documents is relevant here.

and the deposition commenced *without notice* to Altan Redes, . . . an entity that is now a party to the Mexican constitutional appeal and a potential defendant in Rivada's contemplated civil lawsuit in Mexico." *Id.* at 469 (emphasis added). Altan Redes thus "s[ought] to intervene in th[e] matter and request[ed] an order (i) preventing Rivada from using the deposition testimony in Mexican courts or in the media, and (ii) permitting Altan Redes to cross-examine the witness in the deposition ongoing in this district." *Ibid.* After determining that Altan Redes had standing to challenge the § 1782 request,[8] Judge Ellis went on to grant Altan Redes's Rule 24(a) motion to intervene as of right using the same framework we just applied. *Compare id.* at 471–72, *with ante* at 8–13. At that point, Judge Ellis "turn[ed] to the question whether Altan Redes was entitled to notice of . . . the subpoenas." *In re Rivada Networks*, 230 F. Supp. 3d at 473.

At the outset, Judge Ellis said what we have already noted—that "Rivada's decision to file an *ex parte* § 1782 application was proper—indeed, that decision was unremarkable, as § 1782 applications are routinely filed *ex parte*." *Ibid.* "Nevertheless," Judge Ellis continued, "once Rivada's § 1782 application was granted, Altan Redes *was entitled to notice of the subpoenas* . . . as required by the Federal Rules of Civil Procedure." *Ibid.* (emphasis added). "Importantly, § 1782 provides that, unless the order

---

[8] To the extent that the Applicants contest Harris and Caribbean Galaxy's standing, we come out the same way as Judge Ellis:

> Altan Redes has demonstrated that subject matter jurisdiction exists. Altan Redes has standing because it has shown: (i) an injury-in-fact—*e.g.*, the detrimental risk that Rivada is using § 1782 and a deposition improperly to support an existing or imminent litigation against Altan Redes; (ii) that this injury is fairly traceable to Rivada's conduct; and (iii) that this injury is likely to be redressed by a favorable judicial decision—*e.g.*, an order granting Altan Redes an opportunity to . . . inspect any subpoenaed documents.

*In re Rivada Networks*, 230 F. Supp. 3d at 471. Just swap out "Rivada" for our Applicants and "Altan Redes" for Harris and Caribbean Galaxy, and our analysis would be the same. *See also In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("[O]ne against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").

authorizing discovery provides otherwise, 'the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.'" *Ibid.* (quoting 28 U.S.C. § 1782(a)). "And," Judge Ellis noted, "consistent with the statute, the magistrate judge's Order granting Rivada's § 1782 request required that the 'discovery be consistent with Rule 45, FED. R. CIV. P., and other applicable law.'" *Ibid.* (cleaned up). Judge Ellis therefore concluded that, because "the § 1782 subpoenas in this case should have been executed pursuant to [Rule 45], . . . Altan Redes was entitled to notice." *Ibid.*

Our case is indistinguishable but for three minor differences. As in *In re Rivada Networks*, our Applicants filed an *ex parte* Application for a subpoena under § 1782 to gather documentary evidence they intend to use in a foreign proceeding. We granted that Application, and the Applicants served the subpoena for documents on the third-party entity *without* notifying their adversaries in the foreign litigation. Shortly thereafter, those opponents—who didn't have custody of the documents in question but against whom those documents would be used—moved to intervene in this proceeding under Rule 24(a). Their aim? To challenge the subpoena on the grounds that the Applicants had violated Rule 45(a)(4). And just as Judge Ellis found that Rule 45(a)(4) applied because § 1782 mandates—unless a court specifically says otherwise—that an applicant comply with the Federal Rules of Civil Procedure, so do we.

So, what about those three minor differences? The first cuts in favor of the Applicants, the second favors Harris and Caribbean Galaxy, and the third pertains to remedies (which we won't get into just yet).

*First*, our Order granting the Application *didn't* include the Rule 45 language Judge Ellis used in his analogous order. But this omission doesn't change our analysis (even if it makes the Applicants'

15

noncompliance with Rule 45 more understandable).[9] Again, under § 1782 the Federal Rules of Civil Procedure apply here unless the order granting the application says *otherwise*, and we didn't *say otherwise*. While having referenced Rule 45 in our Order granting the Application certainly couldn't have hurt, such a belt-and-suspenders approach wasn't necessary because the Applicants were already on notice of the language of § 1782 itself.

*Second*, at the time Rivada filed its § 1782 application (and, we presume, when it served the resulting subpoenas—the decision isn't entirely clear), Rivada was only engaged in a "constitutional appeal" in Mexico, to which Altan Redes was not yet a party. *In re Rivada*, 230 F. Supp. 3d at 470. And Rivada was "merely contemplating [separate] civil and other judicial proceedings in Mexico," potentially against Altan Redes. *Ibid.* In other words, at the time of the § 1782 application, Altan Redes wasn't yet a party to any Mexican proceeding. That was no big deal, Judge Ellis said, because "even *expected* parties are entitled to notice before a . . . tangible thing is taken pursuant to a § 1782 subpoena." *Id.* at 473. Here, by contrast, the St. Kitts and Nevis actions had *already* commenced (and they already involved Harris and Caribbean Galaxy). If an *expected* party to a foreign litigation is entitled to notice under Rule 45, so (we should think) is an *existing* party.

We therefore reach the same conclusion Judge Ellis did: Our Applicants must comply with the Federal Rules of Civil Procedure, namely Rule 45(a)(4).[10] And other courts have come out the

---

[9] This is not a well-developed area of the law, and this Order shouldn't be construed as a browbeating. That said, Rule 45 applies here, and we must hold the Applicants to it.

[10] To be clear, we are *not* stating a blanket rule that applies in *every* § 1782 proceeding. Indeed, Judge Ellis himself said as much:

> Of course, there may be circumstances where it is appropriate for a successful § 1782 petitioner to refrain from providing notice to potential adverse parties. Such circumstances may occur when a deposition is taken in an ongoing, sealed criminal investigation and secrecy is required to protect the integrity of that investigation. In those circumstances a court may, as § 1782 permits, state that the Federal Rules of Civil Procedure do not apply.

16

same way—albeit without much analysis. *See In re Hornbeam Corp.*, 2015 WL 13647606, at *5 (S.D.N.Y. Sept. 17, 2015), *aff'd* 722 F. App'x 7 (2d Cir. 2018) (summary order) (noting that Rule 45(a)(4) "provides that notice must be served on each party to an action before a subpoena commanding the production of documents or tangible things is served on any third party. Therefore, unless the district court's authorizing order provides otherwise, a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must first serve notice on all parties to the foreign proceedings." (cleaned up)); *cf. In re Crédito*, 2022 WL 16744212, at *4 (W.D. Wa. Nov. 6, 2022) (noting that "subpoenas issued pursuant to § 1782 must comply with Rule 45" and that one party's "failure to provide [the other party] notice and copy of the subpoena before serving [the target] [was] troubling and could have hampered [the other party's] ability to timely object," but denying the resultant motion to quash because it was untimely). Because the Applicants had to comply with Rule 45—but didn't—we must now consider the proper remedy.

### III.   The appropriate remedy is to quash the Bank of America subpoena

Harris and Caribbean Galaxy ask us to quash the Bank of America subpoena, and that's what we'll do. Generally speaking—*i.e.*, in the non-§ 1782 context—quashing a subpoena can be a permissible remedy when a party fails to comply with Rule 45(a)(4). *See, e.g.*, *FDIC v. Kaplan*, 2015 WL 4744361, at *3 (M.D. Fla. Aug. 10, 2015) (Sneed, Mag. J.) (granting a motion to quash "[b]ecause Plaintiff failed to provide prior notice of the Subpoena, as required by Rule 45(a)(4), [and] the Subpoena is [thus] void and unenforceable"); *Cunningham v. Jordan*, 2024 WL 998826, at *2 (N.D. Ga. Feb. 20, 2024) (finding that "Plaintiff's noncompliance with Rule 45(a)(4) justifies quashing [certain] subpoenas that have been, or will be served"); *In re 3M Combat Arms Earplug Prod. Liability Litig.*, 2021

---

*In re Rivada Networks*, 230 F. Supp. 3d at 474. We agree that these—and potentially other—scenarios might create exceptions to the rule we've outlined here. Without outlining an exhaustive list of those exceptions, we think it sufficient to say that our case doesn't present any "such circumstances."

WL 111743, at *2 (N.D. Fla. Jan. 12, 2021) (Jones, Mag. J.) ("Plaintiffs may also move to quash the subpoena on the basis that the MDL Defendants failed to comply with the Rule 45(a)(4) 'prior notice' requirement, the purpose of which is to give an opposing party the opportunity to object to the subpoena prior to the date set forth in the subpoena." (cleaned up)).

We say "can be" because quashing isn't *always* an appropriate remedy for a Rule 45(a)(4) violation. Indeed, a failure to notify "*may* result in the quashing of the subpoena," but only if a party has "raised any substantive objection to the documents sought and discovery is still ongoing." S*uarez v. Padron*, 2019 WL 13256088, at *2 (S.D. Fla. Mar. 25, 2019) (Louis, Mag. J.) (emphasis added)). Here, Harris has raised such an objection by asserting that the Bank of America subpoena is "impermissibly overbroad" because the Applicants have sought "'all documents relating to records showing financial transactions between, among, from, or to' fourteen different individuals and entities over the span of almost a decade." Motion to Quash Reply at 9 (cleaned up).[11] And discovery for the foreign litigation is indisputably ongoing. The Applicants have (after all) served multiple subpoenas on U.S. banks in the last few weeks—all for the purpose of generating evidence for use in those foreign proceedings.

So, to reiterate: Quashing the Bank of America subpoena *would* be appropriate in the circumstances of our case. Again, we have found that (1) Rule 45(a)(4) applies; (2) the Applicants violated that rule; (3) quashing impermissibly served subpoenas is commonplace; (4) Harris and Caribbean Galaxy have raised substantive objections to the documents the Applicants are seeking; and (5) discovery in the foreign litigation is ongoing. And the fact that ours is a § 1782 proceeding (as opposed to a run-of-the-mill civil action) doesn't alter the result. *See Xie v. Lai*, 2019 WL 7020340, at

---

[11] Courts in our situation have also employed a range of other remedies. *See In re Hornbeam*, 722 F. App'x 7, 12 (2d Cir. 2018) (noting—with approval—that the district court, rather than vacate or quash, "directed Hornbeam to provide Symeou with copies of all previously issued subpoenas and to allow Symeou to inspect all materials produced in response"); *In re Rivada Networks*, 230 F. Supp. 3d at 475 ("permit[ting] Altan Redes to inspect any documents or tangible things produced pursuant to the § 1782 subpoenas").

*2 (N.D. Cal. Dec. 20, 2019) ("Orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." (cleaned up)). While the Applicants filed the initial § 1782 Application *ex parte*, this proceeding isn't occurring in a vacuum (as the Applicants would have us believe). *See* Motion to Quash Response at 15 ("The Subpoena was authorized pursuant to 28 U.S.C. § 1782. Caribbean Galaxy was, and still is, not a party to this *ex parte* civil action in which the Subpoena was authorized and served, and as such is not entitled to invoke Rule 45(a)(4). Because Rule 45(a)(4) is inapplicable here, Applicants were not required to provide prior notice of the Subpoena to Caribbean Galaxy."). Yes, technically speaking, the Applicants were the only parties to their *ex parte* Application. But they weren't seeking discovery from Bank of America for the fun of it; they were seeking it to use it in an *ongoing litigation* in St. Kitts and Nevis where there are—wait for it—other parties. As Caribbean Galaxy put it:

> Applicants contend that by unilaterally bringing their § 1782 application on an *ex parte* basis Caribbean Galaxy was thereby reduced to the status of a "non-party" not entitled to prior notice under Rule 45(a)(4). Thus, in Applicants' view, a foreign litigant can procure and serve a Rule 45 subpoena to obtain confidential bank records of its opposing party without any notice of any kind, simply by filing a § 1782 application on an *ex parte* basis and thereafter providing no notice. That is not (and cannot be) the law, including under the most basic principles of process; it would turn § 1782 and Rule 45(a)(4) on their heads; and lead to absurd results.

Joinder to Motion to Quash Reply at 5. We agree.

\* \* \*

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. Harris's Motion to Quash Applicants' Subpoena [ECF No. 10] is **GRANTED** to the extent that the Bank of America subpoena is **QUASHED**.

19

2. Our Order Granting the § 1782 Application [ECF No. 7] is **VACATED** because of the concerns we have about the scope of discovery we permitted. Accordingly, **ALL SUBPOENAS** that have been issued pursuant to that Order are also **QUASHED**.

3. Caribbean Galaxy and Ying Jin's Motion to Quash Applicants' Subpoena to JP Morgan Chase Bank [ECF No. 20] and Motion to Quash Applicants' Additional Subpoenas [ECF No. 26] are **DENIED as moot**.

4. The Applicants **may not serve any other subpoenas** pursuant to our Order Granting the § 1782 Application [ECF No. 7].

5. The Applicants may file a renewed § 1782 application by **June 20, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on June 6, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record