# EXHIBIT C-3

**Case Number :SKBHCV2023/0228**

**FILED HIGH COURT ST.CHRISTOPHER / NEVIS (ST.KITTS CIRCUIT)**

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT

**Submitted Date:08/01/2024 10:32**

**Filed Date:08/01/2024 10:32**

CLAIM NO. SKBHCV2023/0228

**Fees Paid:52.00**

BETWEEN:   [1] **CARIBBEAN GALAXY REAL ESTATE CORPORATION**
           [2] **YING JIN**                                       *Claimants*

And

[1] **MSR MEDIA SKN LTD.**
[2] **PHILIPPE MARTINEZ**                                         *Defendants*

### DEFENCE

1. With respect to paragraph 10[1], the Defendants deny, for reasons hereinafter set out, that the Claimants are entitled to any relief as claimed or at all.

2. Paragraph 11 of the Statement of Claim is admitted.

3. With respect to paragraph 12 the Defendants admit that Ying[2] was at all material times the chief executive officer of Galaxy but does not know where she is ordinarily resident.

4. Paragraphs 13 and 14 are admitted save that:

   (a) MSR Media has a board of directors which is its directing mind. Martinez is one of its directors; and

   (b) Martinez does not reside at Palm Breeze Villa, Paradise Estates, Nevis.

5. With respect to paragraph 15, the Defendants state:

---

[1] The Claimants' statement of claim starts at paragraph 10. Hereafter, unless otherwise indicated, all references to paragraph numbers are to paragraphs in the Statement of Claim

[2] Capitalised terms used herein have the same meaning as set out in the Statement of Claim unless otherwise indicated

  (a) The citizenship by investment program was established in 1984 with the passage of the Saint Christopher and Nevis Citizenship Act 1984;

  (b) However, the Citizenship by Investment Unit was only established in September 2011 under and by virtue of the Saint Christopher and Nevis Citizenship by Investment Regulations SRO No. 52 of 2011 ("**the Original Regulations**").

6. With respect to paragraph 16, the Defendants admit that the CBI program has undergone significant transformations since 1984 but neither admit nor deny the alleged reasons for those transformations and they have no knowledge thereof.

7. With respect to paragraph 17:

  (a) the Defendants admit that by the Saint Christopher and Nevis Citizenship by Investment (Amendment) Regulations, 2021, SRO No. 8 of 2021, the Original Regulations were amended to introduce the AIO as a qualifying investment to apply for citizenship by Investment. The requirements for the AIO were set out in a new Section 5C and included:

    (i) an application for approval of a proposed project was to be submitted to the St. Kitts Investment Promotion Agency ("SKIPA") who was to review and then forward with its recommendations to the Cabinet;

    (ii) in the case of capital infrastructural raising projects, an investor could not utilise the Citizenship by Investment Programme for 100 per cent of the initiative;

    (iii) an investor or group of investors was required to contribute a minimum of 30 per cent of the required funds for the project;

    (iv) the main applicant for citizenship under the AIO was required to invest a minimum of US$200,000.00 in an approved infrastructural project or other approved development project.

  (b) SRO No. 8 of 2021 was amended by the Saint Christopher and Nevis Citizenship by Investment (Amendment) Regulations, 2022, SRO No. 7 of 2022. The amendments included:

    (i) replacing the title with the following new title "Specific Requirements for Alternative Investment Option for Private Enterprise Developers".

    (ii)    With retroactive effect to December 1, 2021, added an option called the "Public Good Infrastructural Project or other approved Public Good Development Project", the developers of which were designated as "Public Good Project Developers";

    (iii)    required a minimum investment of US$175,000.00 (inclusive of a government fee of US$50,000 for a family of 4);

    (iv)    that any development was required to meet the following criteria:

        (A)    the developer had to prove that the project is fully funded, upfront; and

        (B)    the potential projects were to be identified and listed by Government as projects that may qualify as public good development projects.

8.    With respect to paragraph 18:

(a)    the Defendants admit that Galaxy was designated as an approved developer under AIO as a private developer;

(b)    However, pursuant to the Regulations, shares were to be allocated with respect to particular projects undertaken by AIO developers and not to the AIO developers independently of any designated project;

(c)    One such project for which Caribbean Galaxy was approved was the project for the construction of a new prison ("**the Prison Project**");

(d)    The Prison Project was not the project of a private developer and was retroactively designed a Public Good Project under SRO No. 7 of 2022;

(e)    Caribbean Galaxy was awarded 5,500 citizenship units for sale for the Prison Project, which at the legally required price would have yielded US$962.5 million;

(f)    No official information has been publicly disseminated as to the budgeted cost for the Prison Project. However, another party had tendered to carry out the project for US$30 million. Further, a former member of the Unity Administration, Mr. Mark Brantley, publicly stated that Cabinet had approved a budget in 2021 of EC$88 million for a new prison;

    (g)    Caribbean Galaxy was therefore awarded units that under the law would yield in the region of 30 times the estimated cost.

9.    Paragraph 19 is denied. In particular:

    (a)    There has been widespread media coverage of corruption with respect to the Prison Project. For example:

        (i)    On his radio show "On the Mark" on November 15, 2023, Mark Brantley Premier of Nevis and former Minister of Foreign Affairs and a member of the Federal Cabinet when the Prison Project was awarded, stated that the Prison Project is the touchstone for the difficulties and corruption that the CBI program faced and that an inner circle of high government officials (including members of the Cabinet) allowed massive underselling by the Claimants of the units for the Prison Project;

        (ii)    On August 5, 2022, Daily Business published an article referenced the allegations of corruption surrounding the Prison Project;

        (iii)    On 28 June 2022, WIC News published an article reporting that PAM and CCM, two parties that were in Cabinet at the time the Prison Project was awarded, pledged to suspend the Prison Project if elected and reported the description of the Prison Project by Brantley as a "scam";

        (iv)    On December 12, 2022, NevisPages.com published an article reporting the Les Khan ("Khan"), the former head of the CIU, was asked to resign by the new Administration and reported that it came to light that "there have been various allegations that Khan has taken kickbacks from a developer, and in exchange, he favoured the developer by allocating thousands of CBI applications under a special project. Les Khan had been infamous for his involvement surrounding the multi-billion prison project under the leadership of former Prime Minister Timothy Harris. To CBI, this project has been highly controversial, so much so, that the new Government is now undertaking a thorough investigation into the matter to find out the level of Khan's involvement in this project. His involvement was one of the focal issues during the elections and fueled the loss of Timothy Harris' Peoples Labour Party, after a Middle East-based news channel Middle Eastern Times reported the 'prison scandal'";

(b) Such allegations of corruption were a central issue in the election campaigns leading up to the General Elections in 2022;

(c) These allegations led to public statements by officials in the Government, including by Khan in an attempt to dispel public concerns;

(d) The only other project built by Caribbean Galaxy is what is known as "the Ramada Project". This project was marred by delayed completion and to date it is not publicly verifiable that the hotel is operation. As of the date of this Defence, there are still incomplete structures on the property visible from the Island Main Road.

(e) The allegations of corruption include:

(i) The illegal selling of CBI Units for less that the legally mandated price; and

(ii) The payment of bribes to government officials, or persons who were former government officials.

10. Paragraph 20 is admitted save that it is denied that the OTI Hotel was acquired through the CBI real estate program. The OTI hotel was acquired by a subsidiary of MSR Media, MSR Hotels Inc, with private funds. MSR Hotels has subsequently been designated as a Public Good Developer.

11. With respect to paragraph 21:

(a) the Defendants state that on 17th November 2023 the Defendants issued a pre-action demand letter of that date addressed to Timothy Harris, Khan and Vincent Byron. The letter was copied to:

| | |
|---|---|
| William P. Barry, Miller Chevalier, | Garth Wilkin, Attorney General, St. Kitts and Nevis |
| Sandeep Prasanna, Miller Chevalier | Paul Singh and Catherine Coup, CS Global |
| Mark Brantley, Premier Of Nevis | Ms. Ying Jin, CEO, Caribbean Galaxy Real Estate Corporation |

| | |
|---|---|
| Damian Kelsick, Attorney at Law | Farron Lawrence, CaribTrust Ltd. |
| Dwyer Astaphan, Attorney at Law | Dorietta Fraites, SKIPA |
| Daisy Randal, Attorney at Law | Lee Beasley, MSR Media SKN Ltd. |
| Sylvester Anthony, CIU | Terrence A. Crossman, St. Kitts-Nevis Anguilla National Bank |

(b)  The central allegations made in the Letter were that:

(i)  the addressees misrepresented to the Defendants and their American Investors that the CBI program was transparent, and compliant with the law regarding the minimum investment price

(ii)  to the contrary, "during [the addressees'] administration thousands of citizenship shares were illegally sold at prices that were a fraction of the legal rate which was represented to the international community";

(iii)  this practice was illegal;

(iv)  this practice took place under the addressees' administration and management;

(v)  The Defendants' investigation discovered "numerous potential violations of United States laws including fraud, money laundering, tax evasion, and corruption";

(vi)  Notwithstanding the representations by the addresses to the Defendants, the latter established a fraudulent network to sell shares of projects other than those of the Defendants at a fraction of their legal price, especially concerning the Jail Project;

(vii)  Instructions were given by the Defendants to their US lawyers to begin legal action in the United States against the addressees, and all of their associated conspirators, including the claimants..

12. With respect to paragraphs 22 and 23, the Defendants refer to paragraphs 9, 14, 14 and 16 of this Defence.

13. With respect to paragraph 24 and 25:

    (a) the Defendants state that they sent the Letter only to the addressees and the persons copied which was done by email;

    (b) deny that they directed, or caused any to direct, the Letter to the attention of the media or any other persons other than as set out in paragraph 13(a) of this Defence.

14. With respect to paragraphs 26 and 27:

    (a) The Defendants admit that the Letter bears the meanings indicated;

    (b) Deny that they are false and state further:

        (i) Prior to May 2022, the First Claimant was purportedly authorised to implement and develop the Prison Project under the AIO introduced by SRO No 8 of 2021;

        (ii) By SRO No. 7 of 2022 dated 12th May 2022, signed by Dr. Timothy Harris, then Prime Minister and Minister of National Security, SRO No. 8 of 2021 was amended to bifurcate the AIO into the "Alternative Investment Option for a Private Enterprise Developer" and "Alternative Investment Option for a Public Good Project Developer" with retroactive effect to 1st December 2021;

        (iii) The Prison Project was approved prior to SRO No. 7 of 2022 and SRO No. 8 of 2021 was passed to regularize such approval which was then treated as having been approved under the Alternative Investment Option for a Public Good Project Developer option.

        (iv) As set out in paragraph 7(b) above, the requirements for this option included that to qualify for citizenship, a person was by law required to invest a minimum of $175,000 which included a fixed Government fee of US$50,000;

        (v) The Claimants sold most if not all of the citizenship units allocated to the Prison Project for a fraction of the price mandated by law. This fact is

        implicitly admitted by the Claimants in paragraph 27 when they assert they sold for a 'fair' price, rather than the legally mandated price;

(vi)    Further, with respect to the Ramada Project, which was an authorised investment under the real estate option:

    (A)    The minimum investment, whether in the direct purchase of the real estate, or through a holding company, was US$200,000;

    (B)    By virtue of section 4(2) of the Saint Christopher and Nevis Citizenship (CBI Escrow Accounts) Act Cap. 21.27, the entire purchase money was required to be deposited with an escrow agent prior to the submission of the application for citizenship;

    (C)    The Claimants implemented various schemes to enable it to sell the required investments for significantly less than the statutory minimum, including but not limited to:

        I.    Sale of shares in non-existent companies; and

        II.    Sale of shares with guaranteed but non-existent returns on investment;

    (D)    In furtherance of this unlawful scheme, the Claimants conspired with escrow agents to falsely inform the Citizenship by Investment Unit that the relevant applicants/investors had deposited the requisite investment with the escrow agent when in fact no such deposit was made, the escrow agent instead rolling over its own funds and falsely declaring them to be deposits paid by the relevant applicants/investors;

    (E)    This unlawful scheme was designed by the Claimants to sell the requisite investments for less than the legal minimum;

(vii)    In addition to conspiring with escrow agents with respect to the real estate option, the Claimants conspired with other persons to unlawfully sell citizenship units in the Prison Project for less than the mandated minimum. In particular:

(A) Khan was at all material times the head of the Citizenship by Investment Unit. At all material times Khan was well aware of the breaches by the Claimants of the law in underselling the requisite investments and nonetheless processed applications submitted by or on behalf of the Claimants;

(B) Khan was influenced to permit this unlawful behaviour by the payment to him by the Claimants of bribes, by the Second Claimant engaging in a sexual relationship with him, and by providing him perquisites such as gifts and travel on a private jet owned or leased by the Claimants;

(C) Prior to 2015, Denzil Douglas ("**Douglas**") was Prime Minister of St. Kitts and Nevis and Minister of National Security. At all material times Douglas was well aware of the breaches by the Claimants of the law in underselling the requisite investments and nonetheless processed applications submitted by or on behalf of the Claimants;

(D) Douglas was influenced to permit this unlawful behaviour by the payment to him by the Claimants of bribes, by the Second Claimant engaging in a sexual relationship with him, and by providing him perquisites such as gifts;

(E) Between 2015 and 2022, Timothy Harris ("**Harris**") was Prime Minister of St. Kitts and Nevis and Minister of National Security. At all material times Harris was well aware of the breaches by the Claimants of the law in underselling the requisite investments and nonetheless processed applications submitted by or on behalf of the claimants;

(F) Harris was influenced to permit this unlawful behaviour by the payment to him by the Claimants of bribes, by providing him perquisites such as gifts and by allocating large numbers of applications to be process by Nicola Capital Limited, a processing agent owned by Lenworth Harris and Alexis Nisbett, the brother and nephew of Harris respectively.

(c) In addition to the foregoing:

(i) Khan fraudulently altered the applications of applicants who had applied under the Hurricane Relief Fund and falsely represented and processed them as having been made under the Prison Project;

    (ii)    Khan provided confidential information to the Claimants to enable them to compete unfairly with other developers and agents to the point where the Claimants controlled 90% of the CBI market in St. Kitts and Nevis;

    (iii)    Khan and Harris unlawfully conspired to award the Claimants 5,500 citizenship units for the Prison Project knowing full well that it was estimated to cost $88 million; that the lawful proceeds of those allocated units would amount to US$962.5 million; and thereby knew full well that the Claimants intended to sell the said units unlawfully at reduced prices.

(d)    Several predicate offences were committed by the Claimants including:

    (i)    The payment to government officials, including Douglas, Harris and Khan, of bribes;

    (ii)    Aiding and abetting the fraudulent issue of passports to applicants who breached the law of St. Kitts and Nevis,

    (iii)    Aiding and abetting the commission of an offence under Section 4(7) of the Saint Christopher and Nevis Citizenship (CBI Escrow Accounts) Act Cap. 21.27;

    (iv)    Conspiracy to commit the aforesaid offences.

(e)    The dealings by those individuals with proceeds of the said crimes was money laundering.

15. Paragraph 28 is admitted.

16. Paragraphs 29 to 31 are denied and the Defendants repeat paragraph 13 of this Defence. The Defendants say further that the sole purpose of the Letter was to apprise the addressees and the persons copied of their intention to file a claim in the United States.

17. With respect to paragraphs 32 to 36, the Defendants repeat paragraphs 9, 14, 14 and 16 above and state further that they:

(a)    deny that the Letter caused the Claimants any damage to the Claimants;

 (b) deny that they published, or intended to publish, the Letter to any persons other than the addresses and persons copied; and

 (c) deny that any persons copied in were members of the media;

 (d) deny that they had any intention, in publishing the Letter, to secure any greater share of CBI shares and state that the Defendants were issued CBI shares prior to the sending of the Letter and the sending of the Letter cannot in any way result in the number of those shares being increased.

18. With respect to paragraphs 37 to 42 the Defendants admit receipt of the Demand but repeat paragraphs 9, 14, 14 and 16 above.

Dated this 8th day of January, 2024.

..................................................................
Damian E. S. Kelsick, KC
Partner
KELSICK, WILKIN & FERDINAND
Attorneys-at-Law for the Defendants

CERTIFICATE OF TRUTH

I, Philippe Martinez, the Second Defendant and Director of the First Defendant, Defendant, certify on behalf of myself and the First Defendant that I believe that the facts stated in this Defence are true.

Dated this 8th day of January, 2024.

..................................................................
PHILIPPE MARTINEZ

This Defence is filed by Damian E. S. Kelsick KC, Partner, KELSICK, WILKIN & FERDINAND, Attorneys-at-Law for the Defendants, whose address for service in connection with this Claim is Chambers, Fred Kelsick Building, Independence Square South, Basseterre, St. Kitts.

The Court Office is at East Independence Square, Basseterre, St. Kitts, telephone number 465- 2195, Fax No. 465-2482.  The office is open between 9:00 a.m and 3:30 p.m Mondays to Fridays and between 9:00 a.m and 12:00 noon on Saturdays except Public Holidays.

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

FEDERATION OF SAINT CHRISTOPHER AND NEVIS

SAINT CHRISTOPHER CIRCUIT

CLAIM NO. SKBHCV2023/0228

BETWEEN:

[1]    CARIBBEAN GALAXY REAL
       ESTATE CORPORATION
[2]    YING JIN                                   *-Claimants*

AND

[1]    MSR MEDIA SKN LTD.
[2]    PHILIPPE MARTINEZ        *-Defendants*

DEFENCE

Damian E. S. Kelsick, KC Partner
KELSICK, WILKIN & FERDINAND
Attorneys-at-Law for the Defendants