**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-20492-ALTMAN/Reinhart**

IN RE:

MARTINEZ AND MSR MEDIA SKN LTD.,
_____ /

## RESPONSE IN OPPOSITION TO APPLICANTS' RENEWED APPLICATION AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

Movant Dr. Timothy Harris ("***Movant***" or "***Dr. Harris***"), through undersigned counsel and pursuant to 28 U.S.C. § 1782, files this Response in Opposition to Philippe Martinez's and MSR Media SKN LTD.'s (together, "***Applicants***") Renewed Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (ECF No. 35) ("***Renewed Application***") and, alternatively, moves for a protective order limiting the use of any discovery Applicants obtain through this proceeding.

## I.      INTRODUCTION

Underlying this § 1782 proceeding are two separate defamation actions in St. Kitts and Nevis. Relevant to Dr. Harris is the defamation proceeding filed on December 29, 2023 by Dr. Harris against Applicants in the High Court of Justice in St. Kitts and Nevis ("***Defamation Proceeding***"). Dr. Harris filed his Defamation Proceeding against Applicants after Applicants wrongly accused Dr. Harris of engaging in a fraud scheme centered around citizenship by investment ("***CBI***") units under CBI programs established by St. Kitts and Nevis law. Applicants each asserted a "justification" defense in the Defamation Proceeding. To support those defenses, Applicants filed their Renewed Application seeking to obtain records from Bank of America, N.A.

("**Bank of America**"), Wells Fargo, N.A. ("**Wells Fargo**"), and JPMorgan Chase Bank, N.A. ("**Chase**"; collectively, "**Respondent Banks**") (ECF No. 35).[1]

Applicants contend that the records the Respondent Banks possess will help them prove that Movant is among other individuals engaged in the alleged CBI fraud scheme. However, in their Renewed Application, which relies exclusively on the conclusory Declarations of Applicants' own counsel in the Defamation Proceeding, Applicants fail to demonstrate that they satisfy all of the requirements of § 1782. Simply stated, the discovery Applicants seek is statutorily forbidden.

One requirement of § 1782 is that discovery conducted in the United States be "for use" in a proceeding in a foreign jurisdiction. Here, Applicants do not and cannot meet that requirement. Where a defendant asserts a justification defense in a proceeding in St. Kitts and Nevis, that defendant is required to plead the particulars of the defense at the time they assert said defense. *See* Declaration of John Carrington K.C.[2] ("**Mr. Carrington**" or "**Declarant**"),[3] Ex. A at ¶ 13. A defendant cannot, *after* asserting a justification defense, seek out documents to support the defense. *Id*. at ¶ 15. The law of St. Kitts and Nevis does not allow such "fishing expeditions." *Id*. at ¶ 17.

---

[1] Previously, Applicants filed an *ex parte* application pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings (ECF No. 1). The Court originally granted that application (ECF No. 7), but after discovering that Applicants violated various procedural rules, the Court vacated its Order and quashed all subpoenas issued following its Order (ECF No. 34).

[2] "King's Counsel (KC) are barristers or solicitor advocates who have been recognised for excellence in advocacy. They're often seen as leaders in their area of law and generally take on more complex cases that require a higher level of legal expertise. To be awarded King's Counsel (KC) status is a recognition of excellence and one of the highest honours a solicitor can attain. The award is given to lawyers who have demonstrated exceptional ability in advocacy cases of substance, complexity, or significant difficulty or sensitivity in the higher courts of England and Wales, tribunals, arbitrations or other forums." THE LAW SOCIETY, *Becoming a KC* (Jan. 11, 2022), https://www.lawsociety.org.uk/topics/advocacy/becoming-a-kc.

[3] Attached hereto as Exhibit "A".

Despite these clear rules of law, Applicants are (again) embarking on an impermissible, *post hoc* fishing expedition to bolster their justification defenses in the Defamation Proceeding. Applicants' after-the-fact attempts to uncover information to support their justification defenses – which is the sole objective of this § 1782 proceeding – is directly contrary to the law of St. Kitts and Nevis. Accordingly, the Court should reject the Renewed Application.

Even if the § 1782 statutory requirements are satisfied, which they are not, this Court should use its discretion to deny the Renewed Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). First, Applicants failed to demonstrate that they could not obtain the bank records directly from banks within St. Kitts and Nevis's jurisdiction. *See id.* Second, the St. Kitts and Nevis government would likely not be receptive to this Court's interference because Applicants are engaged in an impermissible fishing expedition. *See id*. Third, there is a strong indication that Applicants' sole intention in filing this § 1782 proceeding was in an attempt to circumvent the foreign proof-gathering restrictions of St. Kitts and Nevis, which is demonstrated by the fact that Applicants have not sought any discovery in the foreign Defamation Proceeding. *See id*. And fourth, the proposed subpoenas are unduly intrusive, overbroad, and burdensome because they seek a potentially unlimited universe of sensitive financial documents and bank records from non-parties over an overly-broad period of time. *See id*.

Alternatively, in the event this Court grants Applicants' Renewed Application, Dr. Harris moves for a protective order prohibiting Applicants from using any evidence obtained from the Respondent Banks in any action or proceeding other than the foreign Defamation Proceeding that underlies this § 1782 proceeding and for any purpose other than Applicants' stated purpose, which is allegedly "to demonstrate the veracity of Applicants' statements regarding Foreign Plaintiffs' conduct upon which the Foreign Defamation Proceedings are based." (ECF No. 35-1 at 2.)

## II.      LEGAL STANDARD

"A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (quoting 28 U.S.C. § 1782(a)). If these requirements are met, then § 1782 "authorizes, but does not require, a federal district court to provide assistance." *Intel*, 542 U.S. at 255.

Even if the requirements of § 1782 are met, a district court may nevertheless reject a discovery application and can consider the following factors in exercising such discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Id.* at 264–65. "Unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* at 265.

## III.     ARGUMENT

### A.      This Court should deny the Renewed Application because Applicants do not meet all the required § 1782 factors.

Applicants are not entitled to the discovery they seek from the Respondent Banks because they do not seek evidence "*for use* in a proceeding in a foreign or international tribunal." *See In*

*re Clerici*, 481 F.3d at 1331–32 (emphasis added). It is not enough for Applicants to merely want evidence for use in a foreign proceeding; they must demonstrate "the practical ability to inject the requested information" into a foreign proceeding or that the requested discovery is something that will be "employed with some advantage or serve some use" in the proceeding. *Gerrard v. Koshkin*, 2023 WL 7490870, at *7 (S.D. Fla. Oct. 10, 2023) (quoting *In re Bernal*, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018)). Applicants cannot meet this burden due to St. Kitts and Nevis's proof-gathering restrictions prohibiting Applicants from supplementing their justification defenses with later-obtained information, such as the information they allege will be found in Dr. Harris's bank records, and engaging in fishing expeditions, which is what they are engaged in here.[4]

  As a threshold matter, St. Kitts and Nevis authority would not permit Applicants to use any information obtained from the Respondent Banks because Applicants have already asserted their justification defenses. In St. Kitts and Nevis, a defendant who asserts a justification defense is required to plead the particulars of the defense as they existed at the time the alleged defamatory imputations were made. Ex. A at ¶ 13. In his Declaration, Mr. Carrington explains this concept:

> When a plea of justification is made, the Defendant is required under CPR Part 58.3 to provide particulars as to which of the alleged defamatory words complained of are statements of fact and the facts and matters on which the Defendant relies to support its allegation that those words are true . . . . Furthermore, an imputation must be justified by reference to the facts as they were at the time [the defamatory statement] was published.

*Id*. In light of this requirement, St. Kitts and Nevis law does not allow a defendant to make "a bald, libelous allegation (i.e. without the requisite particulars)" and thereafter engage in discovery "to endeavour to find evidence to build his defence." *Id*. at ¶ 15.

---

[4] The St. Kitts and Nevis procedural rules of court are governed by the Eastern Caribbean Supreme Court Civil Procedure Rules (Revised Edition) 2023 ("**CPR**"). *See* Ex. A at ¶ 10.

This concept is best illustrated in *Gourley v. Plimsoll*, [1873] L.R. 8 C.P. 362,[5] a defamation case out of Great Britain's Court of Common Pleas where the plaintiff was accused of sending over-insured, over-loaded, and under-manned ships to sea. Ex. A at ¶ 19. The defendant sought to issue interrogatories to support his justification defense but the court refused the request, explaining that the defendant was bound to rely on the "information which he possessed at the time of the publication of the alleged libel." *Id*. If the discovery was permitted, the court noted it would "invert the order of things" and allow the defendant to obtain information from the plaintiff which could not legitimately be used to support his justification defense. *Id*. In denying the defendant's request, the court further explained as follows:

> What the [defendant][6] is endeavouring by this motion to do, is, not to rely upon information which he possessed at the time of the publication of the alleged libel, but to ascertain what further facts he can extract from the plaintiff in the way of defence. It seems to me that that is not a legitimate course for the defendant to adopt. He is bound at all events, so far to complete his pleas as to give such particulars of the matters in question as he has the means of giving . . . . It is quite contrary to the practice of the Court to allow interrogatories to be delivered in order to enable the defendant to make a defence of which he is altogether ignorant.

*Id*.

Similar to the defendant in *Gourley*, Applicants would be prohibited from issuing subpoenas to the Respondent Banks to support their justification defenses in the Defamation Proceeding. *See id*. Applicants have already asserted their justification defenses; therefore, Applicants were required by the CPR to have already pled the particular facts of their justification defenses, which must be the facts as they existed at the time Applicants published their defamatory

---

[5] Attached hereto as Exhibit "B".

[6] The court in this case incorrectly wrote "plaintiff." However, a proper reading of the full quote makes clear the court intended to refer to the defendant who published the alleged libel and sought the interrogatories at issue.

letter on November 17, 2023. *See id.* at ¶ 21. ("The defamatory imputations can only be justified by reference to the facts as they were at the time when the imputation was published (Letter of 17th November 2023)."). No new facts or evidence may be injected into the proceeding to prove or bolster Applicants' defenses because any discovery Applicants now seek—or evidence Applicants could ultimately obtain—would be used only to supplement a defense they needed to have already pled in full. *See id.* Accordingly, because governing law establishes that Applicants will not have the "practical ability to inject the requested information" into the Defamation Proceeding, Applicants have not and cannot establish that the bank records they seek are "for use" in the Defamation Proceeding. *See Gerrard*, 2023 WL 7490870, at *7.

   Further, St Kitts and Nevis's proof-gathering restrictions forbid the type of request sought by Applicants in this Court. As the Declarant explains, the two main methods in St. Kitts and Nevis by which parties in a defamation action can conduct discovery at this stage would be by interrogatories or 'Norwich Pharmacal' Orders. Ex. A at ¶ 15. However, given the facts and current procedural posture, neither of those discovery tools would allow Applicants to obtain Movant's bank records. *Id.* As to the former, interrogatories in St. Kitts and Nevis are generally limited to "information about matters in dispute," and requests "determined to be a fishing interrogatory" are not permitted. *Id.* at ¶¶ 16, 17. Similarly, Norwich Pharmacal Orders are "usually granted to identify the identity of a person" and, like with interrogatories, "a Court will not exercise its jurisdiction where it finds that the application is being used to engage in a fishing expedition." *Id.* at ¶ 24 (citing *Ramilos Trading v. Buyanovsky*, [2016] EWHC 3175 (Comm) at [46]). A party is considered on a "fishing expedition" when it seeks information "in order to enable the party to see if he can find out a case, either complaint or defence, of which at present he knows nothing." *Id.* at ¶ 17 (quoting *Gatley on Libel & Slander* 11th Ed., ¶ 33.18). Here, Applicants' request for Dr.

Harris's bank records is just that, a "fishing expedition to attempt to find information to support their libellous allegations of bribery" against Dr. Harris. *Id.* at ¶ 30.

Applicants' request to this Court is most akin to a Norwich Pharmacal Order because it is a discovery request being made to third parties. *See id.* at ¶¶ 24, 25. The Anguillan case of *A, B, C, and D v. E*, [2010] Claim No. AXAHCV 0063,[7] is instructive. It discusses how courts in the Caribbean do not allow parties to use Norwich Pharmacal Orders to engage in fishing expeditions.[8] In *A, B, C, and D*, the court rejected the claimants' attempt to obtain a Norwich Pharmacal Order in aid of foreign proceedings that sought discovery from more than fifteen (15) persons and entities. Ex. A at ¶ 27. The claimants already "ha[d] the information to press their amended Defence and Counterclaim," and thus their request for information, which was "so far reaching," amounted to nothing more than "a fishing expedition." *Id.* In denying the claimants' request for a Norwich Pharmacal Order, the court concluded: "It is clear that [the claimants] intend to explore the possibility of obtaining any information generally which may be of assistance to them in relation to any litigation possible. This can hardly be a valid basis for obtaining the court's assistance." *Id.*

Similar to *A, B, C, and D*, Applicants' subpoenas here request bank records from several different persons and entities, some of whom are not even implicated in the underlying Defamation Proceeding. *See id.* These far reaching subpoenas, just like the prohibited Norwich Pharmacal Order in *A, B, C, and D*, amount to nothing more than a "fishing expedition." *See id.* Applicants already needed to have all the particulars of their defenses and cannot now, after the fact, seek impermissible information just because it "may be of assistance to them" later on. *See id.*

---

[7] Attached hereto as Exhibit "C".

[8] English common law is applied throughout the Eastern Caribbean, including in Anguilla and St. Kitts and Nevis. Ex. A at ¶ 1.

Therefore, the Renewed Application should be denied just as the Norwich Pharmacal Order in *A, B, C, and D* was denied, because the discovery Applicants seek here would not be permissible and will not be admissible in the Defamation Proceeding in St. Kitts and Nevis. *See id.*

Further proof that Applicants are engaged in impermissible attempted discovery is that the Renewed Application contains only vague and unsubstantiated representations that Applicants "seek documentary evidence of CBI-related transactions into and out of U.S. bank accounts and . . . ***reasonably believe*** that at least some of the relevant transactions involved the Respondent Banks." (ECF No. 35-1 at 6–7 (emphasis added).) As made clear by Applicants' own statements, the subpoenas seek information so that Applicants can "find out [their] defence, of which at present [they] know nothing." Ex. A at ¶ 17 (quoting Gatley, ¶ 33.18). As explained in *Gourley*, this is an inverted way of doing things and categorically improper. *See id.* at ¶ 17

In summary, the discovery Applicants seek is invalid and would not be permitted or admissible in St. Kitts and Nevis and, therefore, does not satisfy the statutory "for use" requirement. *See In re Terra Inv., LLC*, 2022 WL 18662732, at *4 (S.D. Fla. Nov. 7, 2022) (concluding that the "for use" statutory factor of § 1782 was not met because "it appear[ed] that, rather than meeting the "for use" relevance requirement, [the applicant] [wa]s engaging in nothing more than an impermissible fishing expedition that is based on pure speculation"). Because Applicants are requesting information that cannot be *used* in the underlying St. Kitts and Nevis action, the Renewed Application should be denied. Applicants' desperate attempt to circumvent St. Kitts and Nevis's proof-gathering restrictions "can hardly be a valid basis for obtaining th[is] court's assistance." *See* Ex. A at ¶ 27 (quoting *A, B, C, and D*, Claim No. AXAHCV 0063).

**B.      The four discretionary *Intel* factors weigh in favor of this Court denying the Renewed Application.**

Even if the statutory requirements were satisfied, which they are not, district courts have broad discretion to deny or tailor requested discovery. *See United Kingdom v. United States*, 238 F.3d 1312, 1318–19 (11th Cir. 2001). This Court should exercise its discretion to quash the proposed subpoenas because all four *Intel* factors weigh in favor of denial of the Renewed Application. *See Intel*, 542 U.S. at 264–65.

*First*, Applicants have failed to demonstrate that the information they seek from the Respondent Banks cannot also be obtained from banks within the jurisdictional reach of the foreign tribunal, which "weighs strongly in favor of denying the application." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013). Applicants have admitted that they are seeking information from the Respondent Banks solely due to their connection to "St. Kitts-Nevis-Anguilla National Bank Limited." (DE 35-1 at 7 ("Bank of America . . . is the intermediary bank to move USD-denominated funds into Caribbean Galaxy's account at the St. Kitts-Nevis-Anguilla National Bank . . . . Wells Fargo and JPMorgan Chase Bank also serve as a U.S. correspondent bank for USD-denominated transactions originating or ending in Caribbean banks."). Yet, Applicants have not explained why they have not tried to get the information they are seeking directly from the St. Kitts-Nevis-Anguilla National Bank, a bank within the foreign tribunal's jurisdictional reach that likely has the records Applicants are seeking from the Respondent Banks. *See In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) ("[T]he key issue is whether the material is obtainable through the foreign proceeding."); *see also In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016) ("[E]vidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings."); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 ("the first discretionary

factor weighs strongly in favor of denying the application" because there is no allegation that the document applicants sought was beyond the foreign tribunal's reach). The only reasonable explanation is that Applicants know the discovery they are seeking here is impermissible abroad. Accordingly, the first *Intel* factor weighs in favor of denial of the Renewed Application.

*Second*, the St. Kitts and Nevis government and tribunal would likely not be receptive to this Court's interference. *See Intel*, 542 U.S. at 264–65. As explained above, the information Applicants seek would not be admissible in light of the justification defenses they have asserted and the fishing expedition they are engaged in. Most notably, however, Applicants have not made clear that the St. Kitts and Nevis government and tribunal would be receptive to the requested discovery. *See In re Rendon*, 2020 WL 8771274, at *13 (S.D. Fla. Nov. 5, 2020) (finding the second *Intel* factor favored denial when "the Court [could not] determine receptivity one way or another"); *accord Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019) (explaining that an applicant "who relies on a 'blanket assertion' or does not properly substantiate its [receptivity] contentions runs the risk of not persuading the court to exercise its discretion in its favor"). Applicants cannot make this showing because the requested discovery would not be permissible in St. Kitts and Nevis and, therefore, the foreign tribunal and government are unlikely to be receptive to this Court's interference. Thus, the second *Intel* factor supports denial of the Renewed Application. *See In re Rendon*, 2020 WL 8771274, at *13; *Intel*, 542 U.S. at 264–65.

*Third*, there is a strong indication that Applicants' sole intention in filing this action was in an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *See id.* Through this § 1782 proceeding, Applicants seek evidence from the Respondent Banks "relating to accounts held . . . at St. Kitts-Nevis-Anguilla National Bank Limited." (*See* ECF No. 35-3.) In theory, Applicants could have issued third-party discovery requests directly to St.

Kitts-Nevis-Anguilla National Bank Limited in the Defamation Proceeding. But Applicants did not, instead attempting to circumvent St. Kitts and Nevis's proof-gathering restrictions by resorting immediately to § 1782. *See In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) (noting that applicant "made no attempts to obtain any discovery . . . in the foreign tribunals," which "indicates an attempt to circumvent those rules"). Such gamesmanship should not be permitted. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (adopting special master's recommendation quashing applicant Sharp's subpoena where "the Special Master found that Sharp had side-stepped less-than-favorable discovery rules by resorting immediately to § 1782"). Should this Court not deny the Renewed Application, Applicants will be successful in having found an alternative jurisdiction (the Southern District of Florida) to circumvent St. Kitts and Nevis's proof-gathering restrictions. Therefore, the third *Intel* factor weighs in favor of denying the Renewed Application.

**Fourth**, the subpoenas are unduly intrusive, overbroad, and burdensome. *See Intel*, 542 U.S. at 264–65. The subpoenas seek a potentially unlimited universe of sensitive financial documents and bank records from non-parties over an overly-broad period of time. The subpoenas request information "***relating to*** records showing financial transactions . . . ," "***relating to*** accounts held by Relevant Parties . . . ," and "***relating to*** fraud, money laundering, or suspicious activity . . ." (ECF 35-3 (emphasis added).) These requests for documents "relating to" other matters are improperly overbroad. *See Com. of Mass., by Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989) ("A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion. Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person

who drafted such a sloppy request."); *see also Sonnino v. Univ. of Kansas Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (holding that request for production seeking "all documents that relate to or concern" a matter was "overly broad on its face").

Additionally, the requests are an intrusion on innocent third parties (the Respondent Banks) as well as an unjustified intrusion into the confidential affairs of numerous of the Banks' customers identified in the subpoenas, against some of whom Applicants do not even allege wrongdoing or any connection to the Respondent Banks. *See* Ex. A at ¶¶ 27, 28. Financial records are inherently sensitive and private and courts have broad discretion to reject or limit subpoenas seeking such information. *See* Fed. R. Civ. P. 26(c) (allowing the court "to protect a party or person from . . . undue burden" by issuing an order "forbidding inquiry into certain matters"); *see also, e.g., NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, 2011 WL 768066, at *2 (M.D. Fla. Feb. 28, 2011) (granting defendant's motion to quash and for protective order because "[t]o the extent the[] [financial] records have any marginal relevancy to this count, such relevancy is outweighed by the sensitive and private nature of these financial records"). Applicants have not established that the relevancy of the documents they seek outweighs the privacy interests of the non-parties from whom and regarding whom they seek financial records.

Further, Applicants assert that they are entitled to issue the subpoenas to the Respondent Banks because Applicants reasonably believe that the relevant transactions involved the Respondent Banks. (DE 35-1 at 7.) However, Applicants' beliefs are based on circumstances that pertain only to Caribbean Galaxy, not Dr. Harris. (*Id.*) Applicants assert the following:

> Caribbean Galaxy maintains a USD-denominated account at Hang Seng Bank Limited, based in Hong Kong, to facilitate such USD transactions. *Id.* ¶ 22. Caribbean Galaxy also maintains wire transfer instructions indicating that the Miami branch of Bank of America, located at 100 SE 2nd Street, Miami, Florida 33131, is the intermediary bank to move USD-denominated funds into Caribbean

> Galaxy's account at the St. Kitts-Nevis-Anguilla National Bank. *Id.*
> Upon information and belief, Wells Fargo Bank and JPMorgan
> Chase Bank also serve as U.S. correspondent banks for USD-
> denominated transactions originating or ending in Caribbean banks.
> *Id.* ¶ 21.

(*Id.*) There is no allegation that the Respondent Banks have any connection to Dr. Harris or, for that matter, any other individual whose bank records Applicants seek. Therefore, at a minimum, the subpoenas should be limited to exclude Dr. Harris.

Finally, the subpoenas request financial records between January 1, 2018 and the present, but the events underlying the Defamation Proceeding and Applicants' defense therein did not arise until mid-2022.[9]  For the foregoing reasons, the fourth *Intel* factor weighs in favor of denial of the Renewed Application. The Renewed Application should be rejected or trimmed to only encompass documents relevant to the Defamation Proceeding. *See Intel*, 542 U.S. at 264–65.

### C.    Alternatively, this Court should issue a protective order.

If this Court permits any of the discovery that Applicants seek, a protective order should nevertheless be issued. "A district court may in its discretion enter a protective order shielding discovery materials from public disclosure upon a showing a good cause and when the balance of interests favor entering the order." *Emess Cap., LLC v. Rothstein*, 841 F. Supp. 2d 1251, 1254 (S.D. Fla. 2012). "Because trial courts are 'in the best position to weigh fairly the competing needs and interests of parties affected by discovery' and because of '[t]he unique character of the discovery process,' trial courts have 'substantial latitude' to determine when a protective order is appropriate and what degree of protection is required." *Id.* at 1255 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

---

[9] Applicants were first granted CBI units in May 2022 and Dr. Harris's tenure as Prime Minister of St. Kitts and Nevis ended on August 6, 2022.

Here, if the Court permits Applicants to discover any of Dr. Harris's sensitive and confidential financial records, then this Court should limit the use of those records to the Defamation Proceeding. Throughout this § 1782 action, Applicants have demonstrated their inability to be forthcoming with their intentions and regarding their actions,[10] and Dr. Harris credibly fears that without a protective order in place his confidential financial records could end up in the wrong hands and improperly used for a much broader purpose than Applicants' stated purpose. This concern is well founded. Previously, Applicants received documents from Wells Fargo and at least one other financial institution pursuant to subpoenas that have since been quashed. (*See* ECF No. 34.) Although Applicants did not proffer those documents in the Defamation Proceeding, they did use the documents in an attempt to substantiate baseless RICO allegations in their newly-filed lawsuit in the Middle District of Florida, *MSR Media SKN Ltd., et al., v. Khan, et al.*, Case No. 24-cv-01248 (M.D. Fla. May 23, 2024). This time around, Dr. Harris wishes not to take any chances taking Applicants at face value and, therefore, asks that if this Court is inclined to grant Applicants' Renewed Application, that it limit Applicants' use of any documents obtained through this proceeding to be used only in the underlying Defamation Proceeding and otherwise order that Applicants keep all documents confidential and segregated.

---

[10] For context, leading up to Judge Altman's Order vacating his initial Order granting Applicants' initial § 1782 application (ECF Nos. 7, 34), Dr. Harris and Caribbean Galaxy discovered that Applicants repeatedly abused the § 1782 process and disregarded governing rules of procedure and Court orders. Specifically, after the Court granted Applicants' initial application seeking to issue a subpoena to only Bank of America, Applicants issued a subpoena to Bank of America *and* a litany of additional subpoenas to other banks without the Court's permission or prior notice to Dr. Harris or Caribbean Galaxy. Further, certain of those unauthorized subpoenas were served on financial institutions located outside of this district in direct violation of § 1782. Later, in press conferences, Applicants publicly gloated about receiving financial records through this § 1782 proceeding but have, to date, continuously refused to produce those documents to Dr. Harris or Caribbean Galaxy despite their counsels' multiple requests.

## IV.    CONCLUSION

The Renewed Application filed by Philippe Martinez and MSR Media SKN LTD. is nothing more than a baseless fishing expedition. The Renewed Application does not meet the statutory requirements of § 1782 and should otherwise be denied in this Court's discretion for the multiple reasons set forth above. Alternatively, if the Court finds that Applicants are entitled to the discovery they seek, this Court should issue a protective order limiting Applicants' use of the requested discovery. Accordingly, Movant Dr. Timothy Harris respectfully requests that the Court deny the Renewed Application, dismiss the § 1782 Application in its entirety, and grant Movant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Elisabeth L. Rabin*
Richard D. Shane, Esq.
Florida Bar No. 70611
RDShane@duanemorris.com
Elisabeth L. Rabin, Esq.
Florida Bar No. 1025636
ERabin@duanemorris.com
DUANE MORRIS LLP
201 South Biscayne Boulevard
Suite 3400
Miami, Florida 33131
Tel: (305) 960-2200
Fax: (305) 960-2201

Eric R. Breslin (admitted *pro hac vice*)
ERBreslin@duanemorris.com
DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Boulevard
Suite 1800
Newark, NJ 07102
Tel: (973) 424-2000

Tarsha A. Phillibert  (admitted *pro hac vice*)
TAPhillibert@duanemorris.com
DUANE MORRIS LLP
901 New York Avenue N.W.
Suite 700 East
Washington, DC 20001
Tel: (202) 776-7808
Fax: (202) 478-0936

*Attorneys for Movant Dr. Timothy Harris*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served this 28th day of June, 2024 by electronic service using CM/ECF on all counsel who have filed a notice of appearance in this action.

*/s/ Elisabeth L. Rabin*
Elisabeth L. Rabin