UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CV-20492-RKA

IN RE:

APPLICATION FOR AUTHORIZATION TO CONDUCT
DISCOVERY FOR USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782,

_____/

## ORDER ON RENEWED MOTION FOR ORDER AUTHORIZING DISCOVERY UNDER 28 U.S.C. § 1782  [ECF No. 35]

Phillipe Martinez and MSR Media SKN Limited ("Applicants") are the defendants in two defamation lawsuits in the High Court of Justice in St. Kitts and Nevis ("the Foreign Lawsuits"). They now seek discovery from Bank of America, Wells Fargo, and JPMorgan Chase (collectively "the Banks") under 28 U.S.C. §1782. The plaintiffs in the Foreign Lawsuits -- Dr. Timothy Harris, Ying Jin, and Caribbean Galaxy Real Estate Corporation, (collectively "Intervenors") -- move to quash the discovery requests. Judge Altman referred this matter to me. ECF Nos. 36, 37.[1] The salient facts, procedural history, and applicable law are summarized in Judge Altman's Orders at ECF Nos. 7 and 34. They will not be repeated, here.

For the following reasons, the Application is GRANTED, but the Documents To Be Produced portion of the subpoenas must be modified to be more limited.

---

[1] A Section 1782 request is a non-dispositive matter that a Magistrate Judge can adjudicate by order, subject to clear error review. *In re Commissioner's Subpoenas,* 325 F.3d 1287, 1292 n.2 (11th Cir. 2003).

*I. The §1782 Statutory Requirements are Met*

Intervenors first argue that the Application fails to meet the "for use in a proceeding in a foreign or international tribunal" requirement of Section 1782. ECF No. 38 at 2, ECF No. 39 at 8-10.[2] They say the records are not "for use in" the Foreign Lawsuit because in St. Kitts and Nevis a "defendant is required to plead the particulars of [a justification] defense at the time they assert said defense [and] cannot, *after* asserting a justification defense, seek out documents to support that defense." ECF No. 38 at 2 (emphasis in original). They rely on the Declaration of John Carrington, K.C. ECF No. 38-1.

Judge Altman addressed this issue in dictum in his Order quashing the previous subpoenas on procedural grounds.

> But, we *aren't* persuaded by Harris and Caribbean Galaxy's § 1782 argument – *viz.,* that "the information sought cannot be 'for use' in the defamation proceedings because the law of St. Kitts and Nevis would not have allowed Applicants to request information of Movant or any third party to support the defamatory allegations made in relation to Movant at the time of publication." . . .  And, even if John Carrington (Harris and Caribbean Galaxy's expert) turns out to be right – and the St. Kitts and Nevis court doesn't admit the evidence the Applicants seek here – his assertions are far from conclusive. That's significant because "[i]n the absence of '*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782,' a district court should err on the side of permitting discovery." . . . In short, while Harris and Caribbean Galaxy are free to challenge any future § 1782 Application the Applicants may file, we're putting them on notice now that we aren't persuaded by the "for use" contentions they've advanced thus far.

ECF No. 34 at 6 n.6 (citations omitted) (emphasis and brackets in original).

---

[2] Caribbean Galaxy and Ms. Jin adopted Dr. Harris' arguments. ECF No. 39 at 2 (adopting ECF No. 38).

Intervenors took Judge Altman up on his invitation to challenge the Renewed Application, but they make materially identical arguments. *Compare* ECF Nos. 10 at 4-8 and 10-1 (Carrington Declaration) *with* ECF No. 38 at 4-9 and 38-1 (Carrington Declaration). Like Judge Altman, I reject the Intervenors' argument that the evidence is not being sought "for use in a proceeding in a foreign or international tribunal."

Intervenors' focus on whether the evidence will be admissible before the High Court is misplaced. As a definitional matter, evidence can be "used" even if it is not "admitted" before a tribunal. "A party may *use* evidence—whether or not it is *admissible* in court under the Federal Rules of Evidence—to develop a theory of the case, to prepare a complaint, to lead it to admissible evidence, to help it to settle a case, and to accomplish other aspects of prosecuting or defending a case." *Glock v. Glock, Inc.,* 797 F.3d 1002, 1007 (11th Cir. 2015) (emphasis in original); *see also* USE, Black's Law Dictionary (12th ed. 2024) ("To employ for the accomplishment of a purpose; to avail oneself of .").[3] "Even if the [foreign] Court should ultimately decline to accept new evidence, the requested discovery would still be 'for use in a foreign proceeding' because [the Applicant] intends to offer it in good faith and argue for its admission." *In re Bernal,* No. 18-21951-MC, 2018 WL 6620085, at *5 (S.D. Fla. Dec. 18, 2018).

---

[3] Although *Glock* involved a Section 1782 request, the quoted language was not addressing the statutory "for use in" factor. Nevertheless, the analysis logically applies to that factor.

## II.        *The Intel Factors Favor Discovery*

Intervenors next argue that this Court, after applying the *Intel* factors, should exercise its discretion to deny the Renewed Application. ECF No. 38 at 3; ECF No. 39 at 11-19.  The *Intel* factors are:

> 1. Whether "the person from whom discovery is sought is a participant in the foreign proceeding;"
>
> 2. "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"
>
> 3. Whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and
>
> 4. Whether the discovery is "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

The first *Intel* factor is satisfied because none of the Banks is a party to the Foreign Lawsuits.

The second *Intel* factor also is satisfied. Intervenors argue, "St. Kitts and Nevis government and tribunal would likely not be receptive to this Court's interference." ECF No. 38 at 11. As support for this conclusion, they return to their argument that the requested evidence is not admissible. They also say, "Applicants have not made clear that the St. Kitts and Nevis government and tribunal would be receptive to the requested evidence." *Id.*; *see also* ECF No. 39 at 12-13.

Applicants respond that the evidence would be admissible. ECF No. 35-1 at 21. They also point out that other courts in the Eastern Caribbean Supreme Court system (which includes St. Kitts and Nevis) have accepted judicial assistance from the

United States. *Id*. at 21-22. They say that even if there is uncertainty about whether the High Court would accept this evidence, this Court should exercise its discretion to allow the discovery and then leave it to the High Court to decide admissibility.

The Eleventh Circuit has declined to assign the burden of proof for the second *Intel* factor. Instead, "district courts need not apply a rigid burden-shifting framework to properly weigh the discretionary factor of receptivity in a § 1782 case. The discretionary factors come into play after the statutory requirements have been satisfied, and they are guideposts which help a district court decide how to best exercise its discretion. In that context, it is not necessary (or helpful) to put the burden on one side or the other with respect to receptivity." *Dep't of Caldas v. Diageo PLC,* 925 F.3d 1218, 1223 (11th Cir. 2019).

Intervenors' reference to this Court's alleged "interference" is confusing. The relevant *Intel* factor asks whether the foreign court would be receptive to this Court providing judicial *assistance.* Even accepting Intervenors' argument that the requested evidence is not admissible before the High Court, the sole possible "interference" would be to require the High Court to make a legal ruling on admissibility. Intervenors have not shown that the High Court would object to this Court allowing the requested discovery and potentially requiring it to issue that ruling.[4]

---

[4] I also note that there is a Treaty on Mutual Legal Assistance in Criminal Matters between St. Kitts and Nevis and the United States. Https://2009-2017.state.gov/documents/organization/105895.pdf (last visited July 23, 2024). This fact suggests that St. Kitts and Nevis is not inherently hostile to legal assistance from the United States.

After considering the totality of the record, I agree with Applicants that the second *Intel* factor favors granting the Application and letting the High Court later decide admissibility. There is nothing in the record that suggests the High Court would not be receptive to this approach.

The third *Intel* factor asks whether the discovery is an attempt to circumvent foreign evidence gathering restrictions. Here, again, Intervenors say it is (because the evidence is not admissible) and Applicants say it is not (because the evidence is admissible). Applicants also say that this evidence cannot be obtained without Section 1782 assistance because the Banks are outside the jurisdiction of the High Court. ECF No. 35-1 at 24. Intervenors respond that the Applicants should first have to seek the evidence from financial institutions within the High Court's jurisdiction. ECF No. 38 at 10, 12.

Both parties miss the point. The relevant question is whether the Section 1782 request is an attempt to circumvent *evidence gathering* restrictions (i.e., discovery), not whether it is an attempt to obtain inadmissible evidence. Inadmissible evidence can nevertheless be discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Sometimes the law says that evidence cannot be gathered, even if it would be relevant and admissible (the paradigm example being privileges). Intervenors have not pointed to anything in the laws of St. Kitts and Nevis that would prohibit the Applicants from gathering the requested discovery. The third *Intel* factor supports authorizing Applicants' request.

The final *Intel* factor is whether the proposed discovery is unduly burdensome or intrusive. Each subpoena calls for (1) documents "relating to records showing financial transactions" by and among Intervenors and seven others, from January 1, 2018, to the present and (2) documents and communications related to the CBI program. ECF No. 35-3 at 11, 22, 33. The original subpoenas covered the same records, but for a time period beginning in 2015.

The alleged defamatory statements are that Intervenors and others corruptly and conspiratorially manipulated the CBI program and made false and fraudulent statements to conceal their actions. ECF Nos. 35-5 at 8; 35-6 at 4-5. More specifically, Applicants say, "The scheme centers on the corrupt transfer of thousands of valuable CBI units to [Caribbean Galaxy] to be sold at prices that are a fraction of the mandated minimum rate established by St. Kitts and Nevis law." ECF No. 35-1 at 7.

Intervenors argue that the subpoenas seek records unrelated to the alleged defamatory statements or the CBI Program. ECF No. 38 at 12-13. They also argue that the time period is overbroad because Applicants did not participate in the CBI Program until 2022. *Id.* at 14. Finally, they argue that the privacy interests of innocent third parties outweigh the relevance of the documents. ECF No. 39 at 15.

I find that the subpoenas as drafted are overbroad and unduly intrusive because they sweep in transactions with third parties that have no relationship to the CBI Program. Financial transactions among the alleged conspirators (referenced as "the Relevant Parties" in the subpoenas) are relevant to show the existence of a conspiracy as asserted in the allegedly-defamatory letter. But, paragraph 1 of the

Documents To Be Produced section is overbroad insofar as it seeks documents related to financial transactions between the Relevant Parties and third parties. If there are transactions with third parties that can be identified as relating to the CBI Program, they will be captured under paragraph 2 of the Documents To Be Produced. The time period is appropriate to try to show the truthfulness of the allegation that a conspiracy existed.

So, the Applicants may issue the subpoenas to the Banks as proposed in Docket Entry 35-3, but with the "Documents to be Produced" section modified as follows:

1. All documents relating to records showing financial transactions between and among the Relevant Parties, including transactions relating to accounts held by Relevant Parties at St. Kitts-Nevis-Anguilla National Bank Limited and transacted through [Bank of America/Wells Fargo/JPMorgan Chase] as correspondent or intermediary bank. This includes all bank statements and any other records showing transfer of money and any other financial instrument, including but not limited to checks, wire transfers, or any other method of transfer between January 1, 2018, and the present.

2. All documents and communications relating to the St. Kitts and Nevis CBI programs, including all documents and communications relating to potential fraud, money laundering, or suspicious activity related to Relevant Parties, the St. Kitts and Nevis CBI programs, or St. Kitts-Nevis-Anguilla National Bank Limited.

This conclusion is without prejudice to Applicants seeking further discovery into transactions with third parties (or some subset of third parties) after receiving the responsive documents or other additional discovery.

### III. *Intervenors Have Not Shown Good Cause for a Protective Order*

Intervenors next ask this Court to enter "a protective order prohibiting Applicants from using any evidence obtained from the Respondent Banks in any

action or proceeding other than the foreign Defamation Proceeding that underlies this § 1782 proceeding and for any purpose other than Applicants' stated purpose, which is allegedly 'to demonstrate the veracity of Applicants' statements regarding [Intervenors'] conduct upon which the Foreign Defamation Proceedings are based.'" *Id*. (citing ECF No. 35-1 at 2); *see also* ECF No. 39 at 20. The party seeking a protective order bears the burden of proving good cause. *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

I decline to prophylactically limit how any Section 1782 evidence can be used in other judicial proceedings. Those decisions are best left to the courts where those proceedings occur. If other proceedings occur, the presiding officers there will be in the best position to apply whatever substantive and procedural rules exist in the corresponding jurisdiction and to determine any limits on how this evidence can be used.

Similarly, whether the Applicants can make other uses of the evidence may depend on which country's laws apply and the specific context in which the Applicants would seek to use the information. For example, in the United States, litigants have a limited First Amendment right to disseminate civil discovery material that can be overcome by a showing of good cause. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (First Amendment interest can be overcome by a showing of good cause).

Intervenors' primary concern seems to be that Applicants will disseminate confidential financial information to third parties and/or the public. In his Response

to the Application, Dr. Harris says, "Applicants have demonstrated their inability to be forthcoming with their intentions and regarding their actions, and Dr. Harris credibly fears that without a protective order in place his confidential financial records could end up in the wrong hands and improperly used for a much broader purpose than Applicants' stated purpose." ECF No. 38 at 15. In a footnote included "for context," Intervenors say, "Applicants repeatedly abused the § 1782 process and disregarded governing rules of procedure and Court orders" because (1) they issued subpoenas without prior notice to Intervenors and without Court authorization, (2) they issued subpoenas outside this judicial district, and (3) "in press conferences, Applicants publicly gloated about receiving financial records through this § 1782 process but have, to date, continuously refused to produce those documents to [Intervenors] despite their counsels' multiple requests." *Id.* n.10.

Intervenors have not met their burden of showing good cause for a protective order. First, substantive arguments cannot be made in footnotes. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n,* 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."); *Espinoza v. Galardi S. Enterprises, Inc.,* No. 14-21244, 2018 WL 1729757, at *4 (S.D. Fla. Apr. 10, 2018) ("a footnote is an incorrect place for substantive arguments on the merits"). Second, Intervenors filed a full-throated sur-reply that went beyond merely responding to the arguments made by Applicants in their Reply. ECF No. 41. Those additional arguments also are not properly before this Court. *Britt v. IEC Corp.,* No. 20-60814-CIV, 2021 WL 4147714, at *13 (S.D. Fla. Sept.

13, 2021) ("[W]e typically refuse to consider arguments that are only made for the first time in reply."). Third, as Judge Altman noted, the law was unclear about whether Applicants had to provide notice under Rule 45 before serving subpoenas, so I do not draw an adverse inference from the fact that Applicants did not notify Intervenors. *See* ECF No. 34 at 13-17. Similarly, as Applicants point out in their Reply, Judge Altman's later-vacated February 8 Order authorized them to serve the subpoenas, so no adverse inference here, either. ECF No. 7. Fourth, although Intervenors complain that Applicants publicly stated that they had obtained financial records, there is no evidence that the content of those records has been disclosed to third parties. Finally, Intervenors complain that Applicants have not shared subpoenaed documents, *see, e.g.,* ECF No. 41 at 3 n.2, but again fail to explain how this conduct implies that Applicants would use the subpoenaed documents for an improper purpose.

Dr. Harris also says that the Applicants improperly attempted to use Section 1782 evidence as a subterfuge to "substantiate baseless RICO allegations in their newly-filed lawsuit in the Middle District of Florida." *Id.* As the Eleventh Circuit held in *Glock,* Section 1782 evidence can be used in a domestic lawsuit. 797 F.3d at 1010 ("[W]e find that § 1782 does not preclude, as a matter of law, the use of evidence procured pursuant to it in subsequent United States civil litigation."). The record shows that Applicants intend to use the evidence in the Foreign Lawsuits so, even if there is an ancillary use in the United States, I decline to draw any adverse inference from this conduct.

For all these reasons, Intervenors have not shown good cause for a protective order.

## CONCLUSION

Accordingly, the Motion for Discovery (ECF No. 35) is **GRANTED** in that Applicants are granted leave to serve subpoenas on Bank of America, N.A., Wells Fargo Bank, N.A., and JPMorgan Chase Bank, N.A., respectively, in the form proposed as Exhibit B to the Renewed Application [ECF No. 35-3] as modified by this Order.

**DONE AND ORDERED** in Chambers this 23rd day of July 2024 at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE